**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

CASE NUMBER:

SMOOTHIE KING FRANCHISES, INC.

      Plaintiff,

v.

SOUTHSIDE SMOOTHIE & NUTRITION
CENTER, INC. and DAVID J. GREGORY,

      Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Smoothie King Franchises, Inc. ("SKFI") sues Defendants, Southside Smoothie & Nutrition Center, Inc. ("SSNC") and David J. Gregory ("Gregory") (collectively, "Defendants"), and states:

1.      This is an action to enjoin Defendants' unauthorized use of SKFI's proprietary and highly confidential recipes and information in the unlawful operation of locations as "Surfside Smoothie" stores in violation of covenants not to compete and confidentiality provisions. Additionally, SKFI seeks damages for these breaches of the confidentiality provisions and covenants not to compete and for amounts due from Defendants under various agreements between the parties.

## THE PARTIES

2.      Plaintiff SKFI is a Louisiana corporation with its principal place of business in the State of Louisiana.

3.      Upon information and belief, Defendant SSNC is a Florida corporation with its principal place of business in the State of Florida.

4.      Upon information and belief, Defendant Gregory is a citizen and resident of the State of Florida.

**JURISDICTION AND VENUE**

5.      SKFI operates and franchises stores throughout the United States.   SKFI's franchise operations are conducted and supervised from its headquarters located in Covington, Louisiana.  The parties have carried on a continuous course of direct communications by mail, email and by telephone through SKFI's headquarters in Covington, Louisiana.

6.      The course of dealing between SKFI and its franchisees, including Defendants, shows that decision-making authority is vested in SKFI's headquarters in Covington, Louisiana.

7.      Defendants negotiated with SKFI in Louisiana for the acquisition of long-term franchise agreements with the knowledge that they would benefit from their affiliation with SKFI.

8.      Defendants voluntarily entered into franchise relationships with SKFI which envisioned continuing and wide-reaching contacts with SKFI in Louisiana, including regulation of their franchised business from SKFI's headquarters in Louisiana.

9.      Defendants have purposefully availed themselves of the benefits and protections of Louisiana law by entering into franchise agreements with SKFI which expressly provide that Louisiana law will govern any disputes among the parties.

10.      Defendants have breached contracts which were to be performed in Louisiana due to their failure to comply with confidentiality agreements and post-termination covenants and by failing to return SKFI's confidential and proprietary operations manual to SKFI in Louisiana. These breaches have caused damage to SKFI in Covington, Louisiana.

11.      This Court has jurisdiction over this action based upon diversity jurisdiction,

- 2 -

under 28 U.S.C. § 1332(a)(1), for civil actions in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive or interest and costs, and is between citizens of different states.

12.     Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) and the forum selection clauses agreed to by the parties in their written agreements, which provide that any action brought by either party against the other in any court, whether federal or state, shall be brought within Louisiana in the judicial district in which SKFI has its principal place of business (i.e., Covington, Louisiana).

13.     Defendants have agreed in writing that in any litigation to enforce the terms of the Franchise Agreements between SKFI and Defendants, SKFI, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

14.     SKFI has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between SKFI and Defendants.

15.     All conditions precedent to the institution of this action have been satisfied, discharged, excused and/or waived.

## THE SMOOTHIE KING SYSTEM

16.     SKFI has developed a comprehensive store operating system for all SKFI franchisees in order to protect the image of SMOOTHIE KING® Stores and to ensure uniform, high quality standards.  The detailed specifications and procedures of the "Smoothie King System" are set forth in SKFI's confidential operations manual, other manuals and other writings issued by SKFI from time to time, such as quality control requirements maintained on SKFI's intranet (the "Manuals").

17.     Every SKFI franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the Franchise Agreement, the Manuals or otherwise in writing.  The Manuals and other writings set forth in detail the mandatory SKFI store operating standards, specifications and procedures, including rules governing areas such as food preparation and handling, cleanliness, health, sanitation, quality and speed of service.  In addition to these strict quality, service and cleanliness requirements, the Manuals and other writings prescribe specified training procedures to ensure that these requirements are met.  The Manuals and other writings are confidential SKFI documents which a franchisee is permitted to have only during the term of the franchise agreements.

18.     SKFI offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel.  This enables SKFI to safeguard the integrity of SMOOTHIE KING® Stores, the Smoothie King System and the SKFI Marks.

19.     Integral to SKFI's compliance and assistance program are periodic inspections and consultations undertaken by SKFI personnel specially trained to observe and advise in all areas of store operating procedure.  Pursuant to SKFI's store visitation process, action plans are issued after a store inspection is conducted. These action plans serve as a training opportunity for the franchisee and as a quality assurance process for SKFI to ensure that critical quality, service and cleanliness standards are being met by the franchisee.  Each SMOOTHIE KING® Franchise Agreement confers upon SKFI the right to enter the store premises to perform this vital function.

20.     As a result of its substantial expenditures of money and effort in developing and implementing the Smoothie King System, SKFI has established a high reputation and a positive

image with the public as to the quality of products and services available at SMOOTHIE KING® Stores, which reputation and image have been, and continue to be, valuable assets of SKFI. SKFI strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations and its careful supervision over the manner and quality of its store service.

## SKFI'S AGREEMENTS WITH DEFENDANTS

### Franchise Agreements

### SMOOTHIE KING® Store #35

21.    Defendant Gregory, individually, owned and operated one (1) of the stores that is the subject of the instant action as a franchised SMOOTHIE KING® Store ("Store #35") in accordance with the terms and conditions of a SMOOTHIE KING® Franchise Agreement and Smoothie King Renewal Franchise Agreement Addendum (the "Store #35 Franchise Agreement").

22.    The location and the date of Franchise Agreement and Addendum for Store #35 is set forth below.

| Store No. | Store Location | Date of Franchise Agreement and Addendum |
|-----------|----------------|------------------------------------------|
| 35 | 825 East Bloomingdale Ave. Brandon, Florida 33511 | July 28, 2006 |

23.    The Franchise Agreement for Store #35 expired by its own terms as of the close of business July 28, 2011.

### SMOOTHIE KING® Store # 197

24. Defendant Gregory, individually, owned and operated one (1) of the stores that is the subject of the instant action as a franchised SMOOTHIE KING® Store ("Store #197") in accordance with the terms and conditions of a SMOOTHIE KING® Franchise Agreement (the "Store #197 Franchise Agreement").

25. The location and the date of Franchise Agreement for Store #197 is set forth below.

| Store No. | Store Location | Date of Franchise Agreement |
|-----------|----------------|------------------------------|
| 197 | 2110 W. Brandon Blvd. Brandon, Florida 33511 | March 19, 1998 |

26. The Franchise Agreement for Store #197 expired as of the close of business on March 19, 2008.

27. The parties thereafter agreed to and indeed did continue to operate pursuant to the Store #197 Franchise Agreement's terms until they were terminated as of the close of business July 31, 2011, because Gregory failed to perform upgrades at the location, failed to install POS Systems at the locations and failed to sign a new Franchise Agreement for Store #197.

**SMOOTHIE KING® Store # 149**

28. Together, Defendants SSNC and Gregory owned and operated one of the stores that is the subject of this action as a franchised SMOOTHIE KING® Store ("Store 149") in accordance with the terms and conditions of a SMOOTHIE KING® Franchise Agreement (the Store #149 "Franchise Agreement"). (The Store #35 Franchise Agreement, Store #149 Franchise Agreement and Store #197 Franchise Agreement are collectively referred to as the "Franchise Agreements").

29. The location and the dates of Franchise Agreement and date of sale for Store #149

is set forth below.

| Store No. | Store Location | Date of Franchise Agreement | Date of Sale of Franchise Agreement |
|---|---|---|---|
| 149 | 3800 S. Tamiami Trail Suite 108 Sarasota, Florida 34239 | March 24, 1997 | July 1, 2001 |

30.     The prior franchisee of Store #149 sold the business, with SKFI's approval, to Defendants SSNC and Gregory on July 1, 2001 pursuant to an Agreement to Sell Business.  That agreement states that Defendants were buying the business located at 3800 South Tamiami Trail, Sarasota, Florida, *i.e.* SMOOTHIE KING® Store #149.

31.     After SSNC and Gregory purchased Store #149, the parties agreed to continue to operate pursuant to the Store #149 Franchise Agreement's terms, and in fact did so.  For example, SKFI went to location to provide training to Defendants on how to operate a SMOOTHIE KING® Store and provided ongoing training and assistance to Defendants throughout the term of the parties' agreement.  Likewise, Defendants made royalty, advertising and other required payments to SKFI pursuant to the terms of the Store #149 Franchise Agreement.  The parties continued to operate pursuant to terms of the parties' agreement until that agreement was terminated as of the close of business July 31, 2011, because SSNC and Gregory failed to perform upgrades at the location, failed to install POS Systems at the locations and failed to sign a new Franchise Agreement for Store #149.

## Obligations Under the Agreements

32.     Pursuant to the Franchise Agreements, Defendants were required to comply with Point of Sale System and image upgrades, and to close down and stop using SKFI confidential and proprietary system upon the expiration or termination of the Franchise Agreements.  Further,

Defendants were required to comply with covenants not to compete upon termination or expiration of the Franchise Agreements.

33.    Defendants were also required to make monthly payments to SKFI for royalties, advertising and other fees in connection with the operation of the Stores. Specifically, Defendants were required to pay SKFI a royalty of a certain percentage of monthly gross sales and an advertising fee of certain percentage of monthly gross sales.

34.    The Franchise Agreements also contain provisions regarding default and establishing the parties' rights and obligations in the event of a default by Defendants under the Franchise Agreements.

35.    The relevant terms of the Franchise Agreements provide that Defendants' failure to comply with any provision of the Franchise Agreements is a default of the Franchise Agreements. The Franchise Agreements further provide that if an act of default occurs and Defendants fail to cure the default after any required notice and within the cure period applicable, SKFI may, at its option and without prejudice to any other rights or remedies provided for thereunder or by law, terminate the Franchise Agreements.

36.    Pursuant to the terms of the Franchise Agreements, Defendants acknowledged and agreed that abiding by every detail of the Smoothie King System is important to maintain the high and uniform operating standards in the Smoothie King System, to increase the demand for the services and products sold by all franchisees in the Smoothie King System, and to protect the reputation and goodwill of the SKFI Marks.

37.    Additionally, the Franchise Agreements contain provisions obligating Defendants to operate the Store in strict conformity with such methods, procedures, standards and specifications as established by SKFI from time to time in the Manuals or otherwise in writing.

38.     Under the terms of the Franchise Agreements, Defendants are obligated to install and use in and about the Store point-of-sale computer programs and equipment ("POS Systems").   The computer hardware component of the POS System must comply with the specifications the Franchisor develops.   Defendants are also obligated by the Franchise Agreements to pay for all future updates, supplements and major modifications to the POS System.

39.     In July of 2007, SKFI issued and communicated to all franchisees, including Defendants, its 2007 POS Technology Directive requiring all SKFI franchisees to purchase and install certain POS Systems at their respective SMOOTHIE KING® Stores.

40.     The POS Systems are a critical component in the operation of SMOOTHIE KING® Stores and the Smoothie King System in that they provide all SKFI franchisees with the benefits of: (1) increased speed of service; (2) loss prevention and reporting module programs; (3) invoicing and accounts receivable module programs; (4) automated recipe systems that facilitate increased smoothie consistency; (5) additional labor management tools; (6) accounting interface programs with export capabilities; (7) integrated team member messaging systems; (8) integrated merchant services systems; (9) automated e-mail reporting programs; and (10) reduced corporate reporting requirements.

41.     In addition, the POS Systems provide a consistent base of information to SKFI which allows for better product sales analysis and more effective product and promotion activities.   As a result, standardized POS Systems have immediate operational benefits to SMOOTHIE KING® Stores and the Smoothie King System.

42.     During the period following July of 2007, SKFI notified all SKFI franchisees, including Defendants, on multiple occasions that they were required to install the POS Systems.

43.     Notwithstanding the multiple notices to the Smoothie King System that the franchisees were required to install the POS Systems, Defendants failed to install the POS Systems.  As a result, on July 2, 2010, SKFI sent correspondence directly to Defendants notifying them that they were required to install the POS Systems.  Defendants still did not install the POS Systems.

44.     SKFI extended the POS compliance deadline for all SKFI franchisees, including Defendants, through January 7, 2011.

45.     Defendants nonetheless failed to install the required POS Systems by January 7, 2011 as required by the Franchise Agreements.  Defendants' use of POS equipment not approved by SKFI and their failure to comply with SKFI's requirements for standards of uniformity of operation constitute a material default of the Franchise Agreements.

46.     By letters dated March 4, 2011, SKFI notified Defendants that they were in default of their obligations under the Franchise Agreements for failing to install the required POS Systems and demanded that they cure the default within the thirty (30) day cure period provided under the Franchise Agreements (the "Default Notices").

47.     Defendants failed to cure the defaults as set forth in the Default Notices.

48.     Further, the Franchise Agreements require certain upgrades to be performed at the Stores at certain times.

49.     Defendants also refused to perform these upgrades.

50.     Because Defendants did not comply with the POS System requirements, image upgrade requirements, and sign new agreements, the Store #149 Franchise Agreement and Store #197 Franchise Agreement terminated on July 31, 2011.  Further, the Store #35 Franchise agreement expired on July 28, 2011.

**Expiration/Termination**

51.    The Franchise Agreements set forth the rights and obligations of the parties in the event of termination or expiration.  As relevant, the Franchise Agreements provide that, upon termination or expiration, a franchisee shall cease all operations of the franchised business and all use of the proprietary marks and system.

52.    As set forth above, the Store #35 Franchise Agreement expired by its own terms on July 28, 2011 and SKFI informed Gregory that he would not be renewed at that location, because Gregory failed to perform upgrades at the location, failed to install POS Systems at the location and refused to sign a new Franchise Agreement for Store #35.

53.    As set forth above, the Franchise Agreements for Stores Nos. 149 and 197 terminated at the close of business July 31, 2011, because Gregory failed to perform upgrades at the location, failed to install POS Systems at the locations and failed to sign a new Franchise Agreement for Store #149 and #197.

54.    Terminated/expired franchisees are prohibited from, among other things, using any of SKFI's trade secrets and the Smoothie King System, which Defendants agreed was confidential and proprietary.  Among other things, Defendants agreed to permanently and immediately cease to use, in any manner whatsoever, any confidential recipes, formulas, SMOOTHIE KING® proprietary products and other ingredients, guest and supplier lists, product specification lists, methods, procedures, or techniques associated with the Smoothie King System.  Defendants also agreed to assign to SKFI any rights it has in any telephone number from which the Defendants had done business under the SMOOTHIE KING® Marks.  Further, Defendants agreed to deliver to SKFI the Manuals and all other materials relating to the operation of the SMOOTHIE KING® Stores.

55.     Terminated/expired franchisees likewise are prohibited from diverting or attempting to divert business from the Stores or any other SMOOTHIE KING® store and from engaging in any business that distributes, markets or sells, at wholesale or retail, any nutritional drinks or general nutrition products or any other related business that is competitive with or similar to a SMOOTHIE KING® store that is located at the Store or within a five (5) mile radius of the Store or any other SMOOTHIE KING® store in existence or planned as of the time of expiration or termination.

56.     Defendants have opened businesses and are operating "Surfside Smoothies" at the very locations of their former SMOOTHIE KING® stores using the confidential and proprietary Smoothie King System, including the confidential recipes. In so doing, Defendants are breaching their explicit obligations under the Franchise Agreements.

57.     Additionally, Defendants have not returned the confidential Manuals and recipe boards to SKFI as required by the Franchise Agreements.

58.     Defendants further agreed that the violations of the confidentiality provisions and the covenants not to compete would result in irreparable injury to SKFI and that injunctive relief is appropriate as there is no adequate remedy at law.

59.     SKFI has expended time, money and effort to establish a successful system for the establishment of businesses offering healthy, blended, fruit drinks and other nutritional products with valuable confidential business information.  As a result of SKFI's efforts, it has developed customer good will that has caused its business to increase from year to year.  SKFI derives independent economic value from the Smoothie King System being confidential and not readily ascertainable by other persons who might obtain economic value from its use or disclosure. SKFI has taken and continues to take steps to prevent the disclosure of the Smoothie King

System.

60.     As a direct and proximate result of Defendants' breach of the confidentiality provisions and the covenants not to compete, SKFI has suffered and will continue to suffer monetary damages, including lost profits, as well as extensive and irreparable injury, loss of goodwill, harm to its current and future business interests and other damages for which there is no adequate remedy at law, unless and until Defendants are restrained from their present conduct.  SKFI also has suffered additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation.

61.     The restraint on competition is reasonably necessary to protect SKFI's present and potential business; otherwise Defendants can use the confidential and proprietary information to deprive SKFI of its present customers, as they have already done, and to obtain SKFI's prospective customers by continuing to operate a smoothie business using the Smoothie King System and confidential information at the very locations where they previously operated SMOOTHIE KING® Stores.

62.     The restrictions comply with Louisiana law and are reasonably necessary to protect SKFI's investment of considerable time, expense and resources in the development of the Smoothie King System and its confidential and proprietary recipes and methods.

## COUNT I --BREACH OF THE FRANCHISE AGREEMENTS--CONFIDENTIALITY

63.      SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

64.     The confidentiality provisions of the Franchise Agreements serve to protect SKFI's legitimate business interests, including, but not limited to, its trade secrets, confidential business information, and its good will and substantial relationships with its franchisees and customers, and are reasonably necessary to protect SKFI's legitimate business interests.

65.    Defendants have not returned the confidential Manuals and recipe boards to SKFI as required by the Franchise Agreements.

66.    Defendants are using SKFI's confidential business information to operate competing smoothie stores.

67.    Defendants' actions constitute breaches of the confidentiality provisions of the Franchise Agreements.

68.    These breaches have directly and proximately caused loss and damage to SKFI.

### COUNT II – VIOLATION OF THE UNIFORM TRADE SECRETS ACT

69.    SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

70.    SKFI takes numerous measures to protect and maintain the secrecy of its confidential and proprietary information, including, but not limited to, requiring confidentiality agreements with the franchisees and employees of the franchisees who will be exposed to the confidential and proprietary information in the course of their employment, utilizing coding systems for recipes, keeping the confidential and proprietary information under lock and key, and not permitting electronic transmission of the information.

71.    Defendants had a duty to maintain the secrecy of SKFI's confidential and proprietary information, including, but not limited to, the Smoothie King System, Manuals, recipe boards, recipes, formulas, guest and supplier lists, product specifications, information, techniques and know-how developed, compiled or prepared by Defendants relating to the Smoothie King System or the operation of the Stores.

72.    The nature of SKFI's confidential and proprietary information and the efforts made by SKFI to protect the secrecy of the information entitle the information to trade secret protection under Louisiana law.

73.     Defendants have misappropriated SKFI's trade secrets by, improperly and without SKFI's consent, disclosing and utilizing SKFI's trade secrets, including Manuals, recipes, formulas, guest and supplier lists, product specifications, information, techniques and know-how, to their own advantage, despite their awareness of the fact that the information was acquired under circumstances giving rise to a duty to maintain its secrecy.

74.     Defendants' actions constitute a violation of the Uniform Trade Secrets Act, La. Rev. Stat. Ann. § 51:1431 (2003) *et seq*. ("UTSA").

75.     These actions have directly and proximately caused loss and damage to SKFI.

### COUNT III -BREACH OF THE FRANCHISE AGREEMENTS—COVENANTS NOT TO COMPETE

76.     SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

77.     The covenants not to compete contained in the Franchise Agreements prohibit Defendants from diverting or attempting to divert business from the Stores or any other SMOOTHIE KING® store and from engaging in any business that distributes, markets or sells, at wholesale or retail, any nutritional drinks or general nutrition products or any other related business that is competitive with or similar to a SMOOTHIE KING® store that is located at the Store or within a five (5) mile radius of the Store or any other SMOOTHIE KING® store in existence or planned as of the time of expiration or termination.

78.     The covenants not to compete comply with Louisiana law and serve to protect SKFI's legitimate business interests, including, but not limited to, its trade secrets, confidential business information, and its good will and substantial relationships with its franchisees and customers.

79.     Defendants' actions constitute breaches of the covenants not to compete provisions of the Franchise Agreements.

80.     These actions have directly and proximately caused loss and damage to SKFI.

## COUNT IV--VIOLATION OF THE UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW

81.     SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

82.     Defendants have misappropriated SKFI's trade secrets and other confidential and proprietary business information, including recipes, methods and systems contained in SKFI's Manuals and recipe boards by failing to return these items after the franchise relationship between the parties ended and by using SKFI's trade secrets and confidential and proprietary business information, including, but not limited to its recipes, to operate competing businesses in the same locations as they operated SMOOTHIE KING® Stores.

83.     The foregoing conduct is unlawful, unethical and deceitful.

84.     Defendants' actions constitute a violation of the Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401 (2003) *et seq*. ("LUTPA").

85.     These actions have directly and proximately caused loss and damage to SKFI.

## COUNT V--BREACH OF THE FRANCHISE AGREEMENTS—
## FAILURE TO MAKE PAYMENTS

86.     SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

87.     Defendants have not paid when due amounts owed to SKFI under the Franchise Agreements.

88.     The failure of Defendants to pay SKFI constitutes breaches of the Franchise Agreements, and those breaches have directly and proximately damaged SKFI.

## DEMAND FOR ATTORNEYS' FEES

89.     The Franchise Agreements at issue in this litigation provide that the prevailing party is entitled to its attorneys' fees and costs.  Pursuant to these provisions, SKFI hereby

demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

90.     UTSA and LUTPA also provide for an award of attorneys' fees to the prevailing party in an actions thereunder.

WHEREFORE, Smoothie King Franchises, Inc. demands judgment against Defendants, Southside Smoothie & Nutrition Center and David Gregory, as follows:

1.     For a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, and all persons acting on their behalf, in concert with them, or under their control, from:

(a)     for a two year period from the date of judgment, directly or indirectly, diverting or attempting to divert any business or guest of the SMOOTHIE KING® Stores or any other SMOOTHIE KING® franchisee to any competitor or do or perform any other act injurious or prejudicial to the goodwill associated with the SMOOTHIE KING® Marks or System;

(b)     operating a business that distributes, markets or sells, at wholesale or retail, any nutritional drinks or general nutrition products, or any other related business that is competitive with SKFI, at the Store location, within a five (5) mile radius of the Store or any other SMOOTHIE KING® Store in existence or planned as of the termination of the Agreements for a two-year period; and

(c)     using or disclosing SKFI's confidential business information and trade secrets, Manuals, recipes, formulas, guest and supplier lists, product specifications, information, techniques and know-how.

2.     For a temporary restraining order, preliminary injunction and permanent injunction directing Defendants, and all persons acting on their behalf, in concert with them, or

under their control, to:

(a)    recall and deliver up to SKFI all copies and editions of the Manuals that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing store operating instructions, store business practices or plans of SKFI;

(b)    assign to SKFI any rights Defendants have in any telephone number from which the Defendants had done business under the SMOOTHIE KING® Marks; and

(c)    allow SKFI, at a reasonable time, to enter the premises of the Store and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as a SMOOTHIE KING® Store.

3.    For money damages, including treble damages for violations of the Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1409A;

4.    For pre-judgment interest and SKFI's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreements;

5.    For an order directing Defendants to file with the Court, and to serve on SKFI's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail th e manner in which Defendants have complied with such injunction or order;

6.    For all costs, disbursements and expenses of this action; and

7.    For all such other relief as this Court may deem just and proper.

Dated this 15th day of August, 2011.

Respectfully submitted,

/s/ James M. Garner
Leopold Z. Sher
lsher@shergarner.com
Louisiana Bar No.: 12014
James M. Garner
jgarner@shergarner.com
Louisiana Bar No.: 19589
Sharonda R. Williams
swilliams@shergarner.com
Louisiana Bar No.: 28809
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Bank of America Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Michael D. Joblove
(*Pro Hac Vice* application pending)
Florida Bar No.: 354147
mjoblove@gjb-law.com
Nina Greene
(*Pro Hac Vice* application pending)
Florida Bar No.: 072079
ngreene@gjb-law.com
**ATTORNEYS FOR SMOOTHIE KING
FRANCHISES, INC.**

10455-005/#8v5

- 19 -