UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SMOOTHIE KING FRANCHISES, INC.                CIVIL ACTION


VERSUS                                        NO: 11-2002


SOUTHSIDE SMOOTHIE & NUTRITION                SECTION: J(5)
CENTER, INC. AND DAVID J.
GREGORY


## ORDER AND REASONS

This matter is before the Court on Plaintiff Smoothie King
Franchises, Inc's **Motion to Dismiss First Amended and
Supplemental Counterclaim (Rec. Doc. 78)**, seeking dismissal of
the counterclaim of Defendants, David Gregory and Southside
Smoothie & Nutrition Center, Inc.

### PROCEDURAL AND FACTUAL BACKGROUND

This civil action arises out of a dispute between a
franchisor and one of its former franchisees following the
termination of their franchise relationship.  Plaintiff Smoothie
King Franchises, Inc. ("Smoothie King") is a privately-held
franchise company based in Covington, Louisiana.  Smoothie King's
primary business is marketing and selling blended frozen fruit
drinks generically referred to as "smoothies."  It also markets
and sells nutritional supplements and other sports nutrition
products.

Defendant David Gregory is a former franchisee who operated

1

a total of three Smoothie King franchises in the state of Florida over the span of approximately 18 years.  Gregory individually owned and operated two stores in Brandon, Florida.  He purchased these franchises, which were designated as stores number 35 and 197, from Smoothie King in July 2006 and March 1998, respectively.  Gregory also owned a Smoothie King franchise in Sarasota, Florida, which he operated through a corporation called Southside Smoothie & Nutrition Center, Inc., of which he was the sole shareholder.  He purchased this franchise, designated store #149, from a prior franchisee with Smoothie King's approval in July 2001.

Following termination of the parties' franchise relationship in July 2011,  Smoothie King reportedly discovered that Gregory was operating several smoothie shops in the same locations as his former Smoothie King franchises, in violation of the non-competition clause in his various franchise agreements.  Based on this discovery, Smoothie King filed the instant lawsuit against both Gregory and Southside Smoothie & Nutrition Center, Inc. on August 15, 2011, seeking damages and preliminary and permanent injunctive relief to enforce the non-competition clause.

Defendants answered, denying Smoothie King's allegations and asserting various affirmative defenses.  Defendants also filed a counterclaim against Smoothie King, alleging that Smoothie King required its franchisees to engage in false and deceptive

advertising in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") by selling their products as "real whole fruit" smoothies, when they in fact contained added sugar, filler juices, and other undisclosed ingredients. Based upon these allegations, Defendants sought damages under various theories, including breach of contract, breach of express warranty, and violation of the Florida Franchise Act.

Shortly thereafter, the Court held an evidentiary hearing on Smoothie King's Motion for Preliminary Injunction. After hearing the evidence, the Court granted Smoothie King's motion in part and enjoined Defendants from operating any business in competition with Smoothie King within the "protected territory" defined by the franchise agreements.

Defendants subsequently amended their counterclaim to add Health Crave, Inc., a Florida corporation through which Gregory allegedly operated two of his Smoothie King franchises, as an additional counter-plaintiff. They also added claims for fraudulent inducement, wrongful issuance of a preliminary injunction pursuant to Louisiana Code of Civil Procedure article 3608, and a supplemental claim for non-pecuniary damages. In response, Smoothie King filed the instant 12(b)(6) motion, seeking to dismiss each of the causes of action asserted in the amended counterclaim. Defendants have filed an opposition to the motion, to which Smoothie King has replied.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The Court is not bound, however, to accept legal conclusions couched as factual allegations. Iqbal, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. Id.

Although it need not contain detailed factual allegations, the face of the complaint must contain sufficient facts to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. <u>Lormand</u>, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. <u>Twombly</u>, 550 U.S. at 555; <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007); <u>Carbe v. Lappin</u>, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

**DISCUSSION**

**A. Reference to Matters Outside the Pleadings**

Generally, when considering a motion to dismiss for failure to state a claim, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, a court may consider documents outside the pleadings when they are: (1) attached to the Rule 12 motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. <u>See In Re Katrina Canal Breaches Litig</u>., 495 F.3d 191, 205 (5th Cir. 2007). Here, because the purchase agreement for the Sarasota store and the three relevant franchise agreements were each attached to Smoothie King's 12(b)(6) motion,[1] were referenced in

---

[1] <u>See</u> Rec. Docs. 78-2; 78-3; 78-4.

the Defendants' counterclaim, and are central to Defendants'
claims, the Court may properly consider them in assessing the
merits of the instant motion.

**B.  Contractual Choice of Law Provision**

Under the <u>Erie</u> doctrine, a federal court sitting in
diversity must apply the forum state's choice of law rules to
determine the controlling substantive law.   <u>Arthur W. Tifford,
PA v. Tandem Energy Corp.</u>, 562 F.3d 699, 705 n.2 (5th Cir. 2009).
The Court will therefore apply Louisiana's choice of law rules.

Here, each of the relevant franchise agreements contains a
choice of law clause which states: "The parties agree that this
Agreement takes effect upon its acceptance and execution by
Franchisor in Louisiana and shall be interpreted and construed
under the laws thereof, which laws shall be prevail in the event
of any conflict of law."[2]  Louisiana law generally allows the
parties to a contract to choose what law will govern their
agreement, provided that the law chosen does not contravene a
strong public policy of the state whose law would otherwise be
applicable.  <u>Francois Chiropractic Ctr. v. Fidele</u>, 630 So. 2d
923, 925 (La. App. 4 Cir. 1993); LA. CIV. CODE art. 3540 ("All
other issues of conventional obligations are governed by the law
expressly chosen or clearly relied upon by the parties, except to

---

[2] <u>See</u> Rec. Doc. 78-2, § 26.1; Rec. Doc. 78-3, § 25.1; Rec.
Doc. 78-4, § 25.1.

the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."). The parties have identified no public policy of any other state that would be undermined if this clause is enforced, and accordingly, the Court will give it effect.

### C. Does the Choice of Law Clause Bar Any Claim Premised Upon Florida Law?

Smoothie King first contends that several of Defendants' claims – specifically, counts one, two, three, and five – must be dismissed because each of these claims are premised on the violation of Florida law, which it argues does not apply because of the choice of law clauses. In support of this argument, Smoothie King relies heavily on <u>America's Favorite Chicken Co. v. Cajun Enterprises, Inc.</u>, No. 89-2778, 1996 WL 148172, at *3 (E.D. La. Mar. 28, 1996). There, the district court held that a franchise agreement's choice of law clause barred the franchisee from asserting claims under California's Franchise Investment Law. <u>Id.</u>

Smoothie King has overlooked the subsequent history of the case upon which it relies, however. On appeal, the Fifth Circuit expressly disagreed with the district court's analysis concerning the choice of law clause. 130 F.3d at 182. The choice of law clause at issue stated that the "Franchise Agreement[s] shall be interpreted and construed under the laws of the State of Louisiana, which shall prevail in the event of any conflict of

7

laws." Id. Because the clause governed only the "interpretation
or construction of the franchise agreements," which were not
implicated by the franchisee's statutory claims, the Fifth
Circuit found no basis for concluding that this claim was
necessarily barred.   However, because it found that the
franchisee had failed to state a claim under California law, the
court ultimately affirmed the district court's judgment.   Id.;
see also Popetes, Inc. v. YCALWB, Inc., 1988 WL 125458, at *1-*2
(E.D. La. Nov. 21, 1988)("We hold that the contractual choice of
law provisions apply only to breach of contract . . . The choice
of law provisions specifically refer to construction and
interpretation of the contracts.").

Here, the choice of law provisions at issue are
substantially identical to the clause in America's Favorite
Chicken Co.  It provides:  "The parties agree that this Agreement
takes effect upon its acceptance and execution by Franchisor in
Louisiana and shall be interpreted and construed under the laws
thereof, which laws shall be prevail in the event of any conflict
of law."[3]  This clause also only purports to apply to the
construction and interpretation of the terms of the Smoothie King
franchise agreements and would thus not automatically preclude
claims premised upon an alleged violation of Florida law.  As a

_____

[3] See Rec. Doc. 78-2, § 26.1; Rec. Doc. 78-3, § 25.1; Rec.
Doc. 78-4, § 25.1.

result, the above-mentioned claims are not subject to dismissal solely on this basis.[4]

**D.  Count One: Breach of the Franchise Agreements**

Smoothie King next argues that Defendants' first breach of contract claim fails as a matter of law and should therefore be dismissed.  In order to state a valid claim for breach of contract under Louisiana law, a plaintiff must allege (1) an undertaking of an obligation to perform, (2) a breach of that agreement by the obligor, and (3) damages suffered by the obligee.  <u>Favrot v. Favrot</u>, 2010-CA-0986, p. 14-15, (La. App. 4 Cir. 2/9/11), 68 So. 2d 1099, 1109-10 (citing <u>Jackson Joint Venture v. World Constr. Co., Inc.</u>, 499 So. 2d 426, 427 (La. Ct. App. 4 Cir. 1986)).

Defendants' allege that  "[p]ursuant to the terms of the Franchise Agreement, Smoothie King, as the Franchisor, was contractually required to design and implement a franchise system that complied with all federal, state, and local laws governing the sale of consumer products to consumers in the locations where Smoothie King franchises are located," which in Defendants' case, was the law of Florida.[5]  However, in making this allegation, Defendants fail to identify any specific provision in any of the

---

[5]  Defendants' First Amended and Supplemental Counterclaim, Rec. Doc. 52-2, ¶ 21.

9

franchise agreements imposing any such obligation on Smoothie King. In order to state a claim for breach of contract under Louisiana law, "a plaintiff must allege a breach of a *specific provision* of the contract." Blackstone v. Chase Manhattan Mortg. Corp., 802 F. Supp. 2d 732, 738 (E.D. La. 2011)(emphasis added)(citing Louque v. Allstate Ins. Co., 314 F.3d 776, 782 (5th Cir. 2003). The Court has reviewed each of the franchise agreements and has identified no provision imposing this responsibility on Smoothie King. While there are certain provisions referencing the issue of legal compliance, these provisions expressly allocate to Defendants, not Smoothie King, the burden of ensuring compliance with all federal, state, and local laws in the operation of their franchises.[6]

Defendants alternatively allege that the franchise agreements contain an implied covenant which obligated Smoothie King to ensure that its franchise system complied with Florida law, including FDUTPA. As noted above, however, the difficulty with this argument is that the express terms of the agreements require charge Defendants, and not Smoothie King, with the

_____

[6] See, e.g., Rec. Doc. 78-2, § 10.3.1 ("Franchisee . . . shall take such steps as are necessary to ensure that all laws, ordinances, regulations, and the like, are followed . . ."); Rec. Doc. 78-2, § 18.3 ("Franchisee shall comply with all federal, state and local laws, rules, and regulations, and shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Franchised Business . . .").

responsibility for complying with all federal, state, or local laws, *specifically including* applicable deceptive and unfair trade practice laws.[7] Defendants cannot disclaim this obligation by alleging that the contract that Smoothie King impliedly agreed to provide a franchise system which complied with Florida law. Were the Court to impose this responsibility on Smoothie King, it would essentially rewrite the terms of the contract and allow Defendants to skirt their own contractually assumed responsibility to ensure that their operations complied with Florida's consumer protection law. As a matter of law, the Court cannot imply an obligation that alters the express terms of a written contract. U.S. v. Croft-Mullins Elec. Co., 333 F.2d 772, 776 (5th Cir. 1964); see also 23 WILLISTON ON CONTRACTS § 63:21 (4th ed. 2002)(internal quotations and citations omitted)("The introduction of an implied term into the contract of the parties . . . can only be justified when the implied term is not inconsistent with some express term of the contract and where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that

---

[7] See Rec. Doc. 78-2, § 10.3.17 ("Franchisee shall not engage or cooperate in any conduct that reflects unfavorably on the reputation of Franchisee, Franchisor, or the System or injures or is prejudicial to the goodwill associated with the Proprietary Marks . . . *or which constitutes a deceptive or unfair trade practice or otherwise violates applicable law or regulations*.")(emphasis added); see also provisions cited supra, at note 5.

it is absolutely necessary to introduce the term to effectuate the intention of the parties."). Accordingly, Defendants' first breach of contract claim must be dismissed.

### E. Other Claims Based on Alleged Violation of the Florida Deceptive and Unfair Trade Practices Act

Defendants' contract claim, along with each of the other claims based on the allegation that Smoothie King's advertising practices violate FDUTPA, also fail as a matter of law, for an additional, more fundamental reason. Although each of these claims – breach of contract, breach of express warranty, fraud, and violation of the Florida Franchise Act – are premised entirely upon the allegation that Smoothie King's advertising practices violate FDUTPA, Defendants have hitherto elected not to bring a claim under the Florida statute itself. Instead, they attempt to incorporate an alleged FDUTPA violation as an element of these various other common law and statutory claims.

This pleading technique a largely transparent attempt to circumvent their inability to bring a claim under FDUTPA itself. Defendants cannot bring a claim under FDUTPA for several reasons. First, based on the facts alleged in the counterclaim, Defendants do not have standing to assert a violation of the FDUTPA. Only a party who is aggrieved by the alleged unfair and deceptive practice has standing to assert a violation of the statute. Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008); Klinger v. Weekly World News, Inc., 747 F.

12

Supp. 1477, 1480 (S.D. Fla. 1990); <u>Macias v. HBC of Fla., Inc.</u>,
694 So. 2d 88, 90 (Fla. 3d Dist. Ct. App. 1997).  Here,
Defendants do not allege that they were the parties deceived by
Smoothie King's allegedly unlawful advertising practices.
Instead, they assert only that their customers are "consumers" as
defined under the act and that *their customers* were deceived.[8]

Second, and relatedly, none of the claims based on Smoothie
King's advertising practices adequately allege that Defendants
have suffered any injury resulting from this conduct.  While
Defendants have offered up conclusory allegations that they "have
suffered damages," they have alleged no facts that, if proven at
trial, would constitute such damages.[9]  The only damages alleged

---

[8]  Defendants' First Amended and Supplemental Counterclaim,
Rec. Doc. 52-2, ¶ 16(e)(6)-(7) ("The Franchisee's customers are
'Consumers' as defined by Section 501.203, Fla. Stat. . . .
Smoothie King's acts in causing [Defendants] to sell within the
State of Florida smoothies containing Nonconforming Blends while
representing to consumers that the ingredients are Ingredient
Whole Fruits are unconscionable, unfair, and deceptive acts or
practices in the conduct of trade or commerce in violation of
Section 501.203 and Section 501.204, et. seq., Fla. Stat.").

[9]  <u>See</u> Defendants' First Amended and Supplemental
Counterclaim, Rec. Doc. 52-2, ¶ 23 ("By designing and
implementing a franchise system that incorporates . . . deceptive
acts and practices . . . in violation of Florida law, Smoothie
King breached the Franchise Agreements, and as a proximate cause
thereof, [Defendants] have suffered damages."); ¶ 29 ("By
designing and implementing a franchise system that incorporates .
. . deceptive acts and practices . . . in violation of Florida
law, Smoothie King breached the aforesaid express warranty and as
a proximate cause thereof, Gregory and the Gregory Parties have
suffered damages."); ¶ 49 ("Gregory detrimentally relied on the
aforesaid affirmative false representations and silence of
Smoothie King . . . [Defendants] did execute and/or perform

in a non-conclusory fashion are non-pecuniary damages, which are
not recoverable under FDUTPA. See Smith v. 2001 S. Dixie
Highway, Inc., 872 So. 2d 992, 994 (Fla. 4th Dist. Ct. App.
2004). Thus, because Defendants do not allege they have suffered
damages compensable under the statute, they cannot show a
violation of FDUTPA on this basis. Mantz v. TRS Recovery Servs.,
Inc., No. 11-80580, 2011 WL 5515303, at *2 (S.D. Fla. Nov. 8,
2011)(holding that plaintiff failed to state a FDUTPA claim
because he failed to allege damages recoverable under the
statute).

Third, any FDUTPA claim which Defendants may have had is now
time-barred. FDUTPA claims are subject to a four-year statute of
limitations. Yusuf Mohamad Excavation, Inc. v. Ringhaver Equipt.
Co., 793 So. 2d 1127, 1128 (Fla. 5th Dist. Ct. App. 2001) (citing
Fla. Stat. 95.11(3)(f) (1989)). When the claim arises out of a
disputed purchase, the cause of action accrues on the date of the
purchase. See Point Blank Solutions, Inc. v. Toyobo America,
Co., Ltd., No. 09-61166, 2011 WL 1833366, at *6 (S.D. Fla. May
13, 2011). Defendants allege that they purchased the last
Smoothie King franchise on July 28, 2006, which reveals that, at
the latest, they would have been required to file any claim on or
before July 28, 2010, over a year prior to the date that the

───────────────

pursuant to the terms of the Franchise Agreements, and as a
proximate cause thereof, [Defendants] sustained actual or
potential loss or damages.").

instant lawsuit was filed.[10] Defendants' allegation that they

only discovered Smoothie King's allegedly deceptive behavior

after the termination of their franchises would not save their

claim, because the Florida Supreme Court has held that the

"delayed discovery" doctrine does not apply to FDUTPA claims.

Davis v. Monahan, 832 So. 2d 708, 709-10 (Fla. 2002).

Furthermore, because Defendants profess to have been unaware of

Smoothie King's allegedly fraudulent conduct, the doctrine of

equitable tolling would not operate to suspend the statute of

limitations.  See Point Blank Solutions, 2011 WL 1833366, at *6

(equitable tolling cannot suspend the running of the limitations

period where plaintiff's complaint alleges that they did not know

they had a claim to bring).

     Without independent substantive rights under the statute,

Defendants cannot use an alleged violation of FDUTPA as an

element of various other common law or statutory claims in order

to plead around an absolute bar to relief.  The effect of such

would be to allow Defendants to create a right to relief where

the Florida legislature has not.  Courts have rightly rejected

this pleading tactic in a variety of other contexts.  See, e.g.,

Palmer v. Ill. Farmers Ins. Co., 666 F.3d 1081, at *5 (8th Cir.

2012)(affirming dismissal of contract claims based upon violation

of insurance statute where plaintiffs had no right of action

under the statute); <u>Calvert v. Burns Int'l Secs. Servs., Inc.</u>, 25 F.3d 1044, at *1 (5th Cir. 1994)(affirming dismissal of time-barred Title VII claim recast as a claim under the Equal Pay Act); <u>Indemnified Capital Investments, SA. V, R.J. O'Brien & Assocs., Inc.</u>, 12 F.3d 1406, 1412 (7th Cir. 1993) (rejecting a state law claim for breach of fiduciary duty based on defendant's alleged violation of National Futures Association rule, where Commodities Exchange Act did not provide an independent right of action); <u>Cameron v. Idearc Media Corp.</u>, No. 08-12010, 2011 WL 4054864, at *8 (D. Mass. Sep. 9, 2011)(plaintiff could not avoid the requirements of the Labor Management Relations Act by restyling his claim as one to be remedied under other statutory schemes); <u>Zaltz v. Wells Fargo Home Mortg.</u>, No. 08-11225, 2010 WL 3026536, at *6 (S.D.N.Y. Aug. 2, 2010)("Plaintiff may not bring her barred sexual harassment and religious discrimination claims in the guise of a breach of contract claim to circumvent the statute of limitations."); <u>Samica Enters. LLC v. Mail Boxes Etc., USA, Inc.</u>, 637 F. Supp. 2d 712 (C.D. Cal. 2008)(dismissing common law fraud and negligent misrepresentation claims based on alleged violations of California Franchise Investment Law when plaintiff could not bring a claim under the statute itself); <u>Irene B. V. Philadelphia Acad. Charter Sch.</u>, No. 02-1716, 2003 WL 24052009, at *5 (E.D. Pa. Jan. 29, 2003) (dismissing claims premised on alleged violations of the Individuals with Disabilities Education

Act where plaintiffs lacked standing to bring their own claims under the statute); Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co., 530 N.W.2d 867 (Minn. Ct. App.1995)(plaintiff cannot use alleged violation of unfair claims practices act as an element of common law tortious interference claim where he could not bring a claim under the statute itself). The Court therefore finds that the claims asserted in counts one, two, three, and five should each be dismissed on this basis.

**F.  Count Four: Breach of the Franchise Agreement for Store #149**

Smoothie King also seeks to dismiss Defendants' second breach of contract claim. Unlike the claims discussed above, this claim is not based on Smoothie King's advertising practices. In count four, Defendants seek to recover losses sustained as a result of Smoothie King's failure to provide them with a designated protected sales territory, as required under the Sarasota franchise agreement. This agreement provides, in pertinent part:

> **"[Smoothie King] shall designate a geographical area surrounding the Franchised Business, to be described in Attachment A (the "Protected Territory") . . . Except as otherwise provided in this Agreement, during the term of this Agreement, Franchisor will not establish or operate Smoothie King Units, nor grant a franchise to any person other than Franchisee to establish or operate Smoothie King Units, under the System and Proprietary Marks in the Protected Territory."[11]**

---

[11]  See Rec. Doc. 78-2, § 10.3.17.

Defendants allege that Smoothie King failed to designate a protected territory for the Sarasota franchise on the attachment referenced in the franchise agreement and that Smoothie King placed a competing franchise in what would have otherwise been the protected territory in 2007, causing them damages in the form of lost profits. Accepting these allegations as true, it is clear that Defendants have successfully stated a cause of action for breach of contract under Louisiana law. They have alleged sufficient facts to show an undertaking by Smoothie King, a breach of that obligation, and damages resulting from the breach. Accordingly, Smoothie King's motion is denied with respect to count four.

### G. Count Six: Damages for Wrongful Issuance of Preliminary Injunction

In their final cause of action, Defendants seek to recover damages for wrongful issuance of a preliminary injunction pursuant to Louisiana Code of Civil Procedure article 3608, which provides:

> **"The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits."**

A preliminary injunction is "wrongfully issued" for purposes of article 3608 when it is reversed on appeal, regardless of

18

whether the party seeking the injunction was in bad faith.
Caldwell v. Griggs, 40,838, p. 7 (La. App. 2 Cir. 3/8/06), 924
So. 2d 464, 469.  Here, Defendants have appealed this Court's
order granting Smoothie King's motion for preliminary injunction
and seek to preserve their right to recover damages and
attorneys' fees incurred in the event that this Court's judgment
is reversed.  Smoothie King maintains that this claim should be
dismissed because it is based on a state procedural article that
does not apply in federal court under the Erie doctrine.

The black letter law of Erie requires federal courts sitting
in diversity to apply the substantive law of the state in which
they sit, but apply federal law to all matters of procedure.
Exxon Corp. v. Burglin, 42 F.3d 948, 950 (5th Cir. 1995) (citing
Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).  The parties have
cited no cases in which a court has directly considered whether
this article is substantive or procedural for the purposes of
Erie.  Smoothie King appears to assume that this article is
procedural merely because it appears in the Louisiana Code of
Civil Procedure.  This  fact alone is not determinative, however.
See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 429
(1996) (although a state law was procedural in nature, its
objective was "manifestly substantive," and therefore applied in
federal court under Erie).

Here, because this article creates a cause of action for

19

damages, it is clearly substantive in nature for <u>Erie</u> purposes.
<u>See</u> <u>Horowitch v. Diamond Aircraft Industries, Inc.</u>, 645 F.3d
1254, 1259 (11th Cir. 2011)(explaining that "it is plain" that a
state law is substantive under <u>Erie</u> when it creates a cause of
action for damages).  Furthermore, it appears that both the Fifth
Circuit and this Court have entertained claims under this article
without expressing any <u>Erie</u> concerns.  <u>See, e.g.</u>, <u>Pendarvis v.</u>
<u>Ormet Corp.</u>, 135 F.3d 1036, 1039 (5th Cir. 1998); <u>Multi-Transp.</u>
<u>Corp. v. Gulf States Toyota, Inc.</u>, No. 93-0448, 1993 WL 218236,
*2 (E.D. La. June 14, 1993).  Accordingly, the Court holds that
the <u>Erie</u> doctrine does not bar Defendants from seeking damages
under article 3608, and this claim will not be dismissed.

### H.  Does Health Crave, Inc. Have Standing to Bring the Claims Asserted in Counts Four or Six?

Having determined that only two of Defendants' claims
survive Smoothie King's motion to dismiss, the Court must next
determine whether Health Crave, Inc. ("HCI"), the corporation
through which Defendant Gregory allegedly operated stores 197 and
35, has standing to assert either of these claims.  Defendants
purportedly added HCI as an additional counter-plaintiff when
they amended their counterclaim, and here, they argue that it has
standing to assert both of the remaining claims.  The Court
disagrees.

With respect to the breach of contract claim, Defendants
acknowledge that HCI was never involved with the operation of

store 149.  Defendants do not allege that HCI was a signatory to the franchise agreement, or that it was an assignee of Defendant Gregory's rights under that agreement.  Absent any of the above, HCI lacks standing to assert a claim for breach of contract. <u>Pearl River Basin Land and Dev. Co., L.L.C. v. State, ex. rel Governor's Office of Homeland Sec. and Emergency Preparedness</u>, 2009-0084, p. 2 (La. App. 1 Cir. 10/27/09), 29 So. 3d 589, 591.

HCI also lacks standing to seek damages under article 3608 of the Louisiana Code of Civil Procedure.  This article only creates a right to relief for a party that has been wrongfully enjoined.  Here, HCI was not a party to this case at the time of the preliminary injunction hearing and was thus not enjoined by the Court's order granting Smoothie King's motion for preliminary injunction.  <u>Town of Brusly v. Grady</u>, No. 09-0238, 2009 WL 1706714, at *5 (La. App. 1 Cir. 6/19/09)(affirming dismissal of claim seeking damages for wrongful injunction when plaintiff was not a party before the trial court during the hearing on the preliminary injunction).  HCI therefore lacks standing to assert the claim alleged in count six, and because it has no standing to bring any claim that survives Smoothie King's 12(b)(6) motion, it should be dismissed from this lawsuit altogether.

**CONCLUSION**

Accordingly, **IT IS ORDERED** that Smoothie King's Motion to Dismiss **(Rec. Doc. 78)** is **GRANTED IN PART** and **DENIED IN PART.**

The motion is **GRANTED** with respect to counts one, two, three, and five. These claims are hereby dismissed with prejudice. The motion is **DENIED** with respect to counts four and six.

**IT IS FURTHER ORDERED** that the stay of discovery ordered on February 7, 2012 is hereby lifted.

New Orleans, Louisiana, this 24th day of February, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE