UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SMOOTHIE KING FRANCHISES, INC.                    CIVIL ACTION

VERSUS                                            NO: 11-2002

SOUTHSIDE SMOOTHIE & NUTRITION                    SECTION: J(5)
CENTER, INC. AND DAVID J.
GREGORY

## ORDER AND REASONS

Before the Court are Plaintiff Smoothie King Franchises, Inc. ("Smoothie King")'s **Motion for Partial Summary Judgment on the Issue of Liability and Defendants' Counterclaims (Rec. Doc. 140)**; Defendants David Gregory and Southside Smoothie & Nutrition Center, Inc. ("Defendants")'s **Memorandum in Opposition (Rec. Doc. 146)**; Defendants' **Motion for Summary Judgment on the Defendants' Third and Fourth Affirmative Defenses to the Amended Complaint (Rec. Doc. 120)**; Smoothie King's **Memorandum in Opposition (Rec. Doc. 148)**; Smoothie King's **Motion to Strike Defendants' Demand for Jury Trial (Rec. Doc. 137)**; and **Defendants' Memorandum in Opposition (Rec. Doc. 147)**.  The Court heard oral argument on the parties' motions on April 11, 2012, at which time it orally granted Smoothie King's Motion for Partial Summary Judgment and denied Defendants' Motion for Summary Judgment on the Third and

1

Fourth Affirmative Defenses.

Subsequent to the hearing, the parties filed a joint stipulation indicating their agreement as to the calculation of damages on Counts III and V of Smoothie King's Complaint.  This stipulation effectively converts Smoothie King's motion for partial summary judgment to a motion for summary judgment, thereby obviating the need for a trial on the issue of damages and rendering moot Smoothie King's Motion to Strike Defendants' Jury Demand **(Rec. Doc. 156)**.[1]  Now, in light of these developments, the Court issues its written reasons.

## PROCEDURAL AND FACTUAL BACKGROUND

This civil action arises out of a dispute between a franchisor and one of its former franchisees following the termination of their franchise relationship.  Smoothie King is a privately-held franchise company based in Covington, Louisiana. Smoothie King's primary business is marketing and selling blended frozen fruit drinks generically referred to as "smoothies."  It also markets and sells nutritional supplements and other sports nutrition products.

Defendant David Gregory is a former franchisee who operated

---

[1]  See Rec. Doc. 158.  The parties have stipulated to damages totaling $12,267.41 on Count III and $6,956.83 on Count V, for a total damages amount of $19,224.24, plus prejudgment interest.

a total of three Smoothie King franchises in the state of Florida over the span of approximately 18 years.  Gregory individually owned and operated two stores in Brandon, Florida.  He purchased these franchises, which were designated as store #35 and #197, from Smoothie King in July 2006 and March 1998, respectively.  Gregory also owned a Smoothie King franchise in Sarasota, Florida, which he operated through a corporation called Southside Smoothie & Nutrition Center, Inc., of which he was the sole shareholder.  He purchased this franchise, designated store #149, from a prior franchisee with Smoothie King's approval in July 2001.

Following termination of the parties' franchise relationship in July 2011, Smoothie King reportedly discovered that Gregory was operating several smoothie shops in the same locations as his former Smoothie King franchises, in violation of the non-competition clause in his various franchise agreements.  Based on this discovery, Smoothie King filed the instant lawsuit against both Gregory and Southside Smoothie & Nutrition Center, Inc. on August 15, 2011, seeking damages and preliminary and permanent injunctive relief to enforce the non-competition clause.

Defendants answered, denying Smoothie King's allegations and asserting various affirmative defenses.  Defendants also filed a counterclaim against Smoothie King.  The counterclaim essentially alleged that Smoothie King required its franchisees to engage in

false and deceptive advertising in violation of the Florida
Deceptive and Unfair Trade Practices Act ("FDUTPA") by selling
their products  as "real whole fruit" smoothies, when they in
fact contained added sugar, filler juices, and other undisclosed
ingredients.  Based upon these allegations, Defendants sought
damages under various theories, including breach of contract,
breach of express warranty, and violation of the Florida
Franchise Act.

The Court then held an evidentiary hearing on Smoothie
King's Motion for Preliminary Injunction.  After hearing the
evidence, the Court granted Smoothie King's motion in part and
enjoined Defendants from operating any business in competition
with Smoothie King within the "protected territory" defined by
the franchise agreements.

Defendants subsequently amended their counterclaim to add
Health Crave, Inc., a Florida corporation through which Gregory
allegedly operated two of his Smoothie King franchises, as a
purported additional counter-plaintiff.  They also added claims
for fraudulent inducement,  wrongful issuance of a preliminary
injunction pursuant to Louisiana Code of Civil Procedure article
3608, and a supplemental claim for non-pecuniary damages.

Smoothie King then moved to dismiss Defendants'
counterclaim, which the Court granted in part and denied in part.
The Court dismissed each of Defendants' claims that were premised

on the allegation that Smoothie King's franchise system violated FDUTPA, which included their claims for breach of the franchise agreements (Count one), breach of express warranty (Count two), fraud (Count three), and violation of the Florida Franchise Act (Count five).  However, the Court found that Defendants' had stated valid claims for breach of the store #149 franchise agreement (Count four) and for wrongful issuance of a preliminary injunction pursuant to Louisiana Code of Civil Procedure article 3608 (Count six), and accordingly denied the motion with respect to those claims.[2]  Thereafter, the parties filed the instant cross motions for partial summary judgment.

### LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  A material fact is a fact which, under applicable law, may alter the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th

---

[2]  See Rec. Doc. 113.

Cir. 2001).  A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  <u>Id.</u> at 324.  The non-movant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. <u>See, e.g.</u>, <u>id.</u> at 325; <u>Little</u>, 37 F.3d at 1075; <u>Isquith for and on Behalf of Isquith v. Middle S. Utils., Inc.</u>, 847 F.2d 186, 198 (5th Cir. 1988).  Where the movant bears the burden of proof on an affirmative defense, however, it must "establish beyond peradventure all of the essential elements of the defense to warrant judgment in his favor." <u>Addicks Servs., Inc. v. GGP-Bridgeland, LP</u>, 596 F.3d 286, 293 (5th Cir. 2010)(internal citations omitted).

When assessing whether a dispute as to any disputed issue of material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or

weighing the evidence." <u>Delta & Pine Land Co. v. Nationwide</u>
<u>Agribusiness Ins. Co.</u>, 530 F.3d 395, 398 (5th Cir. 2008).  All
reasonable inferences are drawn in favor of the nonmoving party,
but a party cannot defeat summary judgment with conclusory
allegations or unsubstantiated assertions.  <u>Little</u>, 37 F.3d at
1075.  A court ultimately must be satisfied that "a reasonable
jury could not return a verdict for the nonmoving party." <u>Delta</u>,
530 F.3d 399.

**DISCUSSION**

**A. Defendants' Motion for Partial Summary Judgment**

Because Defendants' motion for partial summary judgment is
the more narrow of the two motions and would partially moot
Smoothie King's motions if granted, the Court will address it
first.  Defendants' Answer asserts twelve affirmative defenses:
(1) estoppel; (2) waiver; (3) illegality of contract, in that the
Franchise Agreements were designed and implemented to violate
both Florida and federal law; (4) illegality of contract, in that
the Franchise Agreements are absolute nullities and thus
unenforceable under Louisiana law; (5) Smoothie King's purported
breach of the Franchise Agreements preclude enforcement; (6)
fraud; (7) laches; (8) failure of consideration; (9) the
Franchise Agreements constitute illusory contracts; (10) failure
to state a claim upon which relief can be granted; (11) Smoothie
King's breach of the Franchise Agreement for store #149 bars it

7

from enforcing the contract; and (12) fraud in the inducement. In the instant motion, Defendants seek summary judgment as to the third and fourth of these affirmative defenses, which they claim bar Smoothie King's right to enforce the Franchise Agreements.

The Court will address the third affirmative defense first. Defendants' third affirmative defense alleges that the Franchise Agreements require Smoothie King's franchisees to engage in deceptive trade practices by leading consumers to believe that they are buying "whole fruit" smoothies, when they in fact contain added sugar, filler juices, or other undisclosed ingredients, in violation of both Florida law and federal law. Defendants contend that Smoothie King cannot enforce an agreement which compels its franchisees to violate the law, as recognized by the Supreme Court's holding in Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982).

In Kaiser Steel, the Supreme Court permitted a defendant in a breach of contract case to raise an illegality defense because the contractual provision at issue was an unenforceable "hot cargo" agreement which violated both the Sherman Act and the Labor Management Reporting and Disclosure Act ("LMRA"). Id. at 79-83. The Court explained that the specific provision the defendant was alleged to have breached was unlawful on two levels:  first, because it required the defendant to engage in illegal behavior and therefore could not be enforced "without

8

commanding unlawful conduct"; and second, because the agreement itself was unlawful, since the LMRA specifically prohibited unions and employers from entering into "hot cargo" agreements and declared them to be legally void.[3]  Id. at 79.  Accordingly, the Court held that the defendant was not foreclosed from raising the provision's illegality as a defense to the plaintiff's contract claim.

Here, in contrast, the provisions of the Franchise Agreements that Smoothie King seeks to enforce are not *inherently* unlawful, and in no way do they compel any party thereto to violate the law.  See Cotton's, Inc. v. Teamsters Local No. 5, 547 F. Supp. 1336, 1341 (M.D. La. 1982) (distinguishing Kaiser Steel because the contract at issue "neither compel[s] illegal action by the parties nor contain[s] terms which are per se prohibited").  Neither the Lanham Act, the FTC Act, nor FDTUPA directly prohibits a franchisee from voluntarily agreeing to pay

---

[3]  Section 8(e) of the LMRA, 29 U.S.C. § 158(e), provides, in pertinent part:

> It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void.

its franchisor royalty fees, or from agreeing to refrain from competing with its former franchisor for a certain period of time within limited geographic bounds.  The same is true for the mandatory advertising provisions.  Defendants point to no law which proscribes a franchisee's facially valid promise to display only those signs or to run only those advertisements approved by its franchisor.  As such, there is no indication that the parties' Franchise Agreements are inherently unlawful.

It is also clear that the contractual provisions at issue in Smoothie King's claims can be enforced "without commanding unlawful conduct," unlike in Kaiser Steel.[4]  Smoothie King is not seeking to enforce to compel Defendants to display or otherwise participate in advertisements which they claim are fraudulent or deceptive.  Instead, it is seeking to require Defendants to comply with their covenants not to compete, and to pay the balance of the franchise royalty fees due under the Agreements, both of which are unrelated to any allegedly unlawful provisions. Indeed, to the extent that Kaiser Steel is applicable to the instant case, it would appear to support Smoothie King, and not Defendants, because the Kaiser Steel Court clearly recognized

---

[4]  It could also be argued that Defendants' illegality defense is defeated as a matter of law by the terms of the Franchise Agreements themselves, in that Defendants specifically assumed the obligation of independently ensuring their own compliance "with all federal, state and local laws, rules, and regulations."  See Rec. Doc. 2-4, p. 41, §18.3; Rec. Doc. 2-5, p. 41, §18.3; Rec. Doc. 2-6, p. 38, §18.3.

that the illegality defense is only properly applied when it "is not directed to a collateral matter but to the portion of the contract for which enforcement is sought."  455 U.S. at 86. Here, Defendants' illegality defense is clearly directed to a "collateral matter," and thus their reliance on <u>Kaiser Steel</u> is misplaced.

Additionally, the Court finds that the terms of the Franchise Agreements themselves support the notion that Defendants' third affirmative defense does not bar Smoothie King's right to enforcement.  Each of the Franchise Agreements contain a severability clause, which indicates the parties' intent that if any specific provision was found to be unlawful, the rest of the contract would remain enforceable.[5]  As such, even assuming the Franchise Agreements *did* require Defendants to engage in some form of unlawful advertising, this clause allows the Court to severe any unlawful provisions, and Defendants' obligations to pay franchise fees and covenants not to compete would still be enforceable, as a matter of law.

In their fourth affirmative defense, Defendants allege that each of the Franchise Agreements are absolutely null and thus totally unenforceable under article 2030 of the Louisiana Civil Code, since they were designed to implement a widespread system

---

[5]  <u>See</u> Rec. Doc. 2-4, p. 48, § 24.1; Rec. Doc. 2-5, p. 43, § 24.1; Rec. Doc. 2-6, p. 41, § 24.1.

11

of unconscionable consumer fraud.  The Court finds that Defendants have failed to carry their burden of proof with respect to this affirmative defense.

Generally, an obligation cannot exist without a lawful cause.  LA. CIV. CODE art. 1966.  "The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy." LA. CIV. CODE art. 1968.  "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." LA. CIV. CODE art. 2030.  The law presumes that individuals do not intentionally enter into agreements to violate the law.  A Better Place, Inc. v. Giani Inv. Co., 445 So. 2d 728, 732 (La. 1984).  For that reason, the party asserting the illegality of the contract must carry the burden of proving that the opposite is true.  Id.  However, the contracting parties' agreement "will not be decreed illegal where a reasonable construction supports its validity." TeleRecovery of Louisiana, Inc. v. Major, 98-1192, p. 6 (La. App. 1 Cir. 5/18/99), 734 So. 2d 947, 950 (citing Tipton v. Loker, 230 So. 2d 125, 127 (La. Ct. App. 1969).

The classical examples of absolutely null contracts are those which have traditionally immoral objects, such as prostitution, illegal gambling, and illegal drug paraphernalia.  See, e.g., id. (contract for sale of illegal drug paraphernalia);

12

Rosenblath v. Sanders, 91 So. 252 (La. 1922) (lease for prostitution); Martin v. Seabaugh, 54 So. 935 (La. 1911) (contract for illegal gambling partnership).  Contracts violating "rules of public order" also include agreements which have as their cause the violation of a statute.  See Wynne v. New Orleans Clerks and Checkers Union, Local 1497, Int'l Longshoremen's Assoc., AFL-CIO, 550 So. 2d 1352, 1355 (La. Ct. App. 1989).  As such, "if a contract has as its cause or its object circumvention of state law, it will be held an absolute nullity in contravention of the public order."  Id.

Applying these principles, in order to carry their burden on summary judgment, Defendants must have introduced evidence sufficient to establish that the parties' objective in entering each of the Franchise Agreements was to circumvent or violate the law.  The Court finds that Defendants have failed to carry this burden.  The record clearly shows, and Defendants do not dispute, that they signed the Franchise Agreements on the condition that they would be able to establish and operate a business utilizing Smoothie King's franchise system, and in exchange, they agreed to undertake certain responsibilities and pay Smoothie King for the use of its system.[6]  Thus, the only evidence appears to establish that the parties' cause or objective in executing the Franchise

---

[6]  See Rec. Doc. 2-4, p. 10; Rec. Doc. 2-5, p. 11; Rec. Doc. 2-6, p. 9.

13

Agreements was to establish a mutually beneficial franchise relationship for anticipated commercial gain -- not to circumvent the law or to intentionally defraud the unsuspecting public.[7] There is nothing inherently unlawful or immoral about such a purpose, and Defendants' motion for partial summary judgment will therefore be denied.

**B.  Smoothie King's Motion for Partial Summary Judgment**

Having determined that Defendants' third and fourth affirmative defenses do not bar Smoothie King's claims, the Court now turns to the substance of Smoothie King's motion for partial summary judgment.  In its motion, Smoothie King asserts that it is entitled to summary judgment on the issue of liability as to Counts III and V of its Amended Complaint.[8]  However, as previously noted, the parties' subsequent joint stipulation effectively converts the motion for partial summary judgment to a motion for summary judgment on each of Smoothie King's remaining claims.

In order for summary judgment to be proper, Smoothie King must first establish that none of Defendants' remaining

---

[7] See Rec. Doc. 2-4, p. 10; Rec. Doc. 2-5, p. 11; Rec. Doc. 2-6, p. 9.

[8] The parties have agreed to an amicable resolution of Counts I, II, and IV of Smoothie King's Amended Complaint. See Smoothie King's Memorandum in Support of its Motion for Partial Summary Judgment as to Liability on its Claims and Defendants' Counterclaims, Rec. Doc. 140-1, p. 1 n.1.

14

affirmative defenses bar their claims as a matter of law, or that
Defendants lack sufficient evidence to establish one or more
essential elements as to each of these defenses.  These defenses
include: (1) estoppel; (2) waiver; (3) Smoothie King's purported
breach of the Franchise Agreements preclude enforcement; (4)
fraud; (5) laches; (6) failure of consideration; (7) the
Franchise Agreements constitute illusory contracts; (8) failure
to state a claim upon which relief can be granted; (9) Smoothie
King's breach of the Franchise Agreement for store #149 bars it
from enforcing the contract; and (10) fraud in the inducement.
The Court will address each defense in turn.

### i. Estoppel

Defendants assert that they "detrimentally relied on
Smoothie King to develop and implement a franchise system that
complied with all Florida and federal law, and based on the
foregoing allegations, Smoothie King is estoped to assert the
allegations of the Complaint and is estoped to enforce the
Franchise Agreements."[9]  The doctrine of estoppel is generally
disfavored under Louisiana law.  L.T. v. Chandler, 40,417-CA, p.
6 (La. App. 2 Cir. 12/14/05), 917 So. 2d 753, 758.  Nonetheless,
the doctrine may be invoked if a party seeking its application
demonstrates (1) a representation; (2) justifiable reliance on
the representation; and (3) a change of position to one's

---

[9]  Defendants' Answer, p. 32, ¶ 17.

detriment on account of the reliance or representation.

"A party having the means readily and conveniently to determine the true facts, but who fails to do so, cannot claim estoppel." Morris v. Friedman, 94-C-2808 (La. 11/27/95), 663 So. 2d 19, 25.  Additionally, a party seeking to invoke estoppel must show that it exercised "such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding." Chandler, 917 So. 2d at 758 (citing Case v. La. Med. Mut. Ins. Co., 624 So. 2d 1285 (La. Ct. App. 1993)).

Here, no reasonable jury could find that Defendants have introduced sufficient evidence to justify application of the estoppel doctrine.  The undisputed evidence shows that Defendants operated their Smoothie King franchises for approximately 18 years, during which time they had ready and convenient access to all of the information regarding Smoothie King's advertisement practices they now allege Smoothie King has misrepresented.  By Defendants' own admission, the ingredients for the blends used in Smoothie King's products were plainly stated on the packing labels of the products and ingredients that were regularly shipped to them for use in their franchise stores.[10]  The menu

---

[10]   Defendants' Answer, p. 11 ("The only notification to franchisees, including Gregory, of the actual content of the Nonconforming Blends was on the packing labels of the boxes in which the Nonconforming Frozen Blends were shipped to franchisees."); pp. 12-13 ("Gregory, individually and through the

16

boards that were alleged to have conveyed Smoothie King's alleged
deceptive ingredient lists to the consuming public were
prominently displayed on the in-store menu boards posted in each
of Defendants' stores.  Yet, Defendants incredulously allege to
have been completely unaware of such practices until shortly
after the time that Smoothie King terminated their franchises.
The evidence overwhelmingly shows that Defendants had "the means
readily and conveniently to determine the true facts," and thus
no reasonable jury could conclude that Smoothie King is estopped
from enforcing the Franchise Agreements.  <u>Morris</u>, 663 So. 2d at
25.

### ii.  *Waiver*

Next, Defendants allege that "Smoothie King has waived the
ability to assert the allegations of the Complaint or attempt to
enforce the Franchise Agreement(s)" by virtue of the fact that
its  franchise system allegedly does not comply with both Florida
and federal law.[11]

Waiver is the intentional relinquishment of a known existing
legal right.  In order to invoke the defense of waiver, a
defendant must show "an existing right, knowledge of its

Gregory Parties as the operating entities, while operating as a
Franchisee, at the direction of Smoothie King . . . utilized
in-store menus as required by Smoothie King to identify to the
consuming public menu items as containing Ingredient Whole Fruits
as ingredients . . .").

[11]  Defendants' Answer, p. 32, ¶ 18.

existence, and either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Peavey Co. v. M/V ANPA, 971 F.2d 1168, 1175 (5th Cir. 1992) (citing Ledoux v. Old Republic Life Ins. Co., 233 So. 2d 731, 735 (La. Ct. App. 1970); Tate v. Charles Aguillard Ins. & Real Estate, 508 So. 2d 1371, 1373 (La. 1987)).

Here, Defendants have offered no evidence whatsoever suggesting that Smoothie King intended to relinquish its right to enforce the Franchise Agreements.  Nor have they shown any conduct inconsistent with an intention to enforce the Agreements.[12]  Accordingly, the Court finds that Defendants have failed to establish the doctrine of waiver applies in this case.

### iii.  Laches

Next, Defendants assert that Smoothie King "has failed to enforce the terms of the expired and/or non-existent franchise agreement for store 197 that expired in March of 2008," and is

---

[12]  Smoothie King has expressed, and Defendants have acknowledged, that quite the opposite is true.  See Rec. Doc. 2-4, p. 42, § 21.3; Rec. Doc. 2-5, pp. 42-43, § 21.3; Rec. Doc. 2-6, p. 40, § 21.3 ("No failure of Franchisor to exercise any power reserved to it under this Agreement, or to insist upon compliance by Franchisee with any obligation or condition in this Agreement . . . shall constitute a waiver of Franchisor's right to demand exact compliance with any of the terms of this Agreement . . . nor shall any delay; forbearance, or omission by Franchisor to exercise any power or right arising out of any breach or default by Franchisee of any of the terms, provisions, or covenants of this Agreement affect or impair Franchisor's rights . . .").

therefore barred from enforcing the Franchise Agreement for store 197 under the doctrine of laches.[13]

Although the Franchise Agreement for store #197 may have appeared to have expired by its own terms on March 19, 2008, the Court previously found at the preliminary injunction hearing that the parties were continuing to operate under the same terms and conditions set forth by the initial Franchise Agreement for store #197, and were accordingly bound to the same extent established therein until July 31, 2011, when Smoothie King terminated Defendants' franchises.[14]  The Court therefore rejects Defendants' assertion that Smoothie King has failed to enforce the Franchise Agreement since March 2008.

In any case, however, Defendants cannot assert the defense of laches under Louisiana law.  The Louisiana Supreme Court has made clear that the doctrine of laches is a common law doctrine that has no place in Louisiana's civil law system.  See Fishbein v. State ex rel. La. State Univ. Health Sciences Ctr., 2004-2482, p. 16 (La. 4/12/05), 898 So. 2d 1260, 1270 ("Because the doctrine of laches is in conflict with this state's civil laws of prescription, the statements contained in those civil opinions that suggest the doctrine of laches may be applicable under certain circumstances are hereby repudiated."); see also Picone

---

[13]   See Defendants' Answer, p. 34, ¶ 24.

[14]   See Rec. Doc. 140-4, pp. 106-08.

v. Lyons, 601 So. 2d 1375, 1377 (La. 1992) ("The common law
doctrine of laches does not prevail in Louisiana and the
legislature may create, shorten, lengthen or abolish prescriptive
periods at its discretion."). Moreover, the Franchise Agreements
specifically provide that Smoothie King's failure to exercise its
rights will not preclude its right to enforce the terms of the
Agreements.[15] See Sporre S.A. de C.V. v. Int'l Paper Co., No.
99-2638, 1999 WL 1277243, at *3 (S.D.N.Y. Dec. 30, 1999) (finding
that a laches defense was barred by "non-waiver" provision
contained in parties' agreement). Consequently, Defendants'
laches defense fails as a matter of law.

   ***iv.   Lack of Consideration***

   Defendants' next affirmative defense asserts that, because
Smoothie King's franchise system does not comport with Florida
and federal law, the Franchise Agreements each fail for lack of
consideration. Under Louisiana law, however, "[c]onsideration,
in the common-law sense, is not a prerequisite for a valid
contract." See Smith v. Amedisys Inc., 298 F.3d 434, 446 (5th

---

   [15] See Rec. Doc. 2-4, p. 42, § 21.3; Rec. Doc. 2-5, pp. 42-
43, § 21.3; Rec. Doc. 2-6, p. 40, § 21.3 ("No failure of
Franchisor to exercise any power reserved to it under this
Agreement, or to insist upon compliance by Franchisee with any
obligation or condition in this Agreement . . . shall constitute
a waiver of Franchisor's right to demand exact compliance with
any of the terms of this Agreement . . . nor shall any delay;
forbearance, or omission by Franchisor to exercise any power or
right arising out of any breach or default by Franchisee of any
of the terms, provisions, or covenants of this Agreement affect
or impair Franchisor's rights . . .").

Cir. 2002) (quoting <u>Unkel v. Unkel</u>, 699 So. 2d 472, 475 (La. Ct. App. 1997)).  Louisiana's Civil Code requires only "cause," and not "consideration" as a foundational prerequisite to the formation of a contract.  <u>Id.</u> (citing LA. CIV. CODE art. 1967 cmt. (c)).

The Civil Code defines a contract as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE art. 1906.  No obligation can exist without a lawful cause, which is defined as "the reason why a party obligates himself." LA. CIV. CODE arts. 1966, 1967.  There is a presumption that a party has a valid cause in undertaking an obligation, even if it is unexpressed.  <u>Nat'l Am. Ins. Co. v. Countours Unlimited, Inc.</u>, No. 97-2072, 1998 WL 252141, at *2 (E.D. La. May 8, 1998).

Here, in order to establish lack of cause as an affirmative defense, Defendants must have adduced evidence showing that the parties essentially had no valid or lawful reason for undertaking the obligations set forth in the Franchise Agreements.  The Court finds that Defendants have not carried this burden.  As was previously explained, the record indisputably shows that Defendants signed the Franchise Agreements on the condition that they would be able to establish and operate a smoothie business under Smoothie King's franchise system, and in exchange, they agreed to undertake certain responsibilities and pay Smoothie

21

King for the use of its system.[16]  This is sufficient to establish that the parties' cause was to establish a franchise relationship, and Defendants have introduced no evidence suggesting that such is not the case.  See Cellular One v. Boyd, 94-1783, pp. 7-8 (La. App. 1 Cir. 3/3/95), 653 So. 2d 30, 34 (employment contract did not fail for lack of valid cause where evidence showed that employee signed as a condition of continued employment, and employer received continued benefit of employee's services).  Accordingly, because Defendants have failed to come forward with any factual evidence to support this affirmative defense, the Franchise Agreements do not fail for lack of valid cause.

### v.  Breach of Contract

Defendants' fifth affirmative defense alleges that Smoothie King failed to fulfill its express contractual obligation to provide a franchise system which complied with all applicable laws in the state where the franchise was located.[17]  A party to a contract may generally assert the other party's  failure to perform, or breach, as an affirmative defense.  Fetja v. Werner Enters., Inc., 412 So. 2d 155, 158 (La. Ct. App. 1982). Generally, in order to establish a breach of contract under

---

[16]  See Rec. Doc. 2-4, p. 10; Rec. Doc. 2-5, p. 11; Rec. Doc. 2-6, p. 9.

[17]  See Defendants' Answer, Rec. Doc. 91, pp. 35, 37-38.

Louisiana law, a party must establish (1) an undertaking of an obligation to perform, (2) a breach of that agreement by the obligor, and (3) damages suffered by the obligee on account of the breach.  Favrot v. Favrot, 2010-CA-0986, pp. 14-15 (La. App. 4 Cir. 2/9/11), 68 So. 2d 1099, 1109-10 (citing Jackson Joint Venture v. World Constr. Co., Inc., 499 So. 2d 426, 427 (La. Ct. App. 1986)).

Here, however, Defendants cannot establish even the first element.  Defendants cite no provision in any of the applicable Agreements obligating Smoothie King to provide a franchise system which complied with all applicable laws in the state where the franchise was located.  In order to establish a breach of contract under Louisiana law, "a plaintiff must allege a breach of a *specific provision* of the contract." Blackstone v. Chase Manhattan Mortg. Corp., 802 F. Supp. 2d 732, 738 (E.D. La. 2011) (citing Louque v. Allstate Ins. Co., 314 F.3d 776, 782 (5th Cir. 2003)) (emphasis added).  In fact, the only provisions referencing the issue of legal compliance obligates Defendants to ensure their *own* compliance with "all federal, state, and local laws."[18]  Accordingly, this defense also fails as a matter of law.

### *vi. Fraud in the Inducement*

---

[18]   See Rec. Doc. 2-4, p. 41, §18.3; Rec. Doc. 2-5, p. 41, §18.3; Rec. Doc. 2-6, p. 38, §18.3.

Defendants also allege in two other affirmative defenses that they were fraudulently induced to execute the Franchise Agreements based on Smoothie King's affirmative misrepresentations that its franchise system fully complied with Florida and federal law.  They alternatively claim that Smoothie King fraudulently failed to disclose that its franchise system did not comply with Florida and federal law.[19]

In order for a party to a contract to successfully establish a defense based on fraud, he must introduce evidence sufficient to show (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.  Howard v. La. Citizens Prop. Ins. Corp., 2010-1302, p. 12 (La. App. 4 Cir. 4/27/11), 65 So. 3d 697, 704 (citing Shelton v. Standard/700 Assocs., 2001-0587 (La. 10/16/01), 798 So. 2d 60, 64).

Defendants apparently contend that the Franchise Agreements _themselves_ contained "express and false representations . . . that Smoothie King's franchise system was in conformance with federal and Florida law."[20]  However, the Court has reviewed each

---

[19]  See Defendants' Answer, Rec. Doc. 91, pp. 35, 37-38.

[20]  Defendants' Answer, Rec. Doc. 91, p. 33.

of the franchise agreements and has identified no language which might constitute an express representation of such.  While there are certain provisions which reference the issue of legal compliance, as the Court has previously noted, these provisions expressly allocate the burden of ensuring compliance with all applicable state, local, and federal law to the Defendants, and not to Smoothie King.[21]

Furthermore, fraud does not vitiate a party's consent "when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill."  LA. CIV. CODE art. 1954.  Where the alleged misrepresentation relates to facts which could have been discovered upon investigation or inspection, and where the party alleging fraud has been granted the opportunity to conduct such an investigation or inspection before entering the contract, that party cannot subsequently complain that his consent was vitiated by fraud.  See Long v. Bruns, 31,427-CA, p. 8 (La. App. 2 Cir. 1/20/99), 727 So. 2d 664, 669; White v. Lamar Realty, Inc., 303 So. 2d 598, 601-02 (La. Ct. App. 1974).  Here, Defendants expressly acknowledged that they had read the franchise

---

[21]  See Rec. Doc. 2-4, p. 41, § 18.3; Rec. Doc. 2-5, p. 41, § 18.3; Rec. Doc. 2-6, p. 38, § 18.3 ("Franchisee shall comply with all federal, state and local laws, rules, and regulations, and shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Franchised Business . . .").

25

agreements, had "conducted an independent investigation of the
Smoothie King® System," and after being granted the opportunity
to consult its own independent advisors, had found it to be
suitable in all respects.  As a result, the Court will not
entertain Defendants' complaints that Smoothie King fraudulently
induced them to enter the Franchise Agreements.

Finally, to the extent that Defendants allege fraud based on
Smoothie King's purported omissions regarding its advertising or
labeling practices, this defense also fails as a matter of law.
In order to establish fraud based on omission, "there must exist
a duty to speak or to disclose information." Am.'s Favorite
Chicken Co. v. Cajun Enters., Inc., 130 F.3d 180, 186 (5th Cir.
1997) (quoting Greene v. Gulf Coast Bank, 593 So. 2d 630, 632
(La. 1992)).  Whether a duty exists is a question of law.  Mundy
v. Dept. of Health and Human Res., 620 So. 2d 811, 813 (La.
1993).  A duty to disclose may be statutorily imposed or may
arise from a special relationship between the parties, such as a
fiduciary relationship. See Am.'s Favorite Chicken Co., 130 F.3d
at 186 (quoting Greene, 593 So. 2d at 633).

However, Louisiana law is clear that a franchisor and a
franchisee are not ordinarily considered fiduciaries.  Id.; Delta
Truck & Tractor, Inc. v. J.I. Case Co., 975 F.2d 1192, 1205 (5th
Cir. 1992); Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732
F.2d 480, 493 (5th Cir. 1984).  Furthermore, Defendants have

26

adduced no other evidence suggesting the existence of a relationship of trust and confidence with Smoothie King which could give rise to a duty to disclose.  Consequently, any alleged omission regarding Smoothie King's advertising practices does not constitute fraud as a matter of law, and therefore summary judgment is proper as to each of Defendants' fraud defenses.  <u>See</u> <u>Wilson v. Mobil Oil Corp.</u>, 940 F. Supp. 944, 955 (E.D. La. 1996) (dismissing fraud claim where plaintiff failed to allege facts which would give rise to a fiduciary duty or other special relationship with defendant).

### *vii.  Failure to State a Claim*

Defendants also assert that Smoothie King has failed to state a claim upon which relief can be granted.  In order to state a claim for breach of contract under Louisiana law, a plaintiff must establish (1) an undertaking of an obligation to perform, (2) a breach of that agreement by the obligor, and (3) damages suffered by the obligee on account of the breach. <u>Favrot</u>, 68 So. 2d at 1109-10 (citing <u>Jackson Joint Venture</u>, 499 So. 2d at 427).  As will be explained more fully below, Smoothie King has not only stated a claim for breach of contract, but has also introduced uncontradicted evidence establishing each essential element thereof.  Accordingly, Defendants' assertions to the contrary are without merit.

### *viii.  Failure of Consideration or Illusory Contracts*

In their next, affirmative defense, Defendants assert that the Franchise Agreements do not contain protected geographic areas and thus fail for lack of consideration, or otherwise constitute legally unenforceable "illusory contracts." As was previously discussed, "cause," rather than consideration, is a prerequisite to the formation of a valid contract under Louisiana law. La. Land & Exploration, Co. v. Pennzoil Exploration and Prod. Co., 962 F. Supp. 908, 917 (E.D. La. 1997). Cause is defined as the reason a party obligates himself. LA. CIV. CODE art. 1967. The law presumes that a party has valid cause in undertaking an obligation, even if that cause is not explicitly expressed. Countours Unlimited, Inc., 1998 WL 252141, at *2. Thus, the party asserting the absence of valid cause must establish its absence by a preponderance of the evidence. Id.

Even accepting Defendants' allegations that Smoothie King failed to designate a protected territory for their franchises, the Franchise Agreements would still not fail for lack of cause, or as illusory contracts. Defendants' right to a protected territory in which to operate their businesses, while important, is not the only valid cause underlying an agreement to establish a franchise relationship. For instance, the Franchise Agreements also acknowledge that Defendants sought the right to use Smoothie King's proprietary marks, to obtain access to confidential materials and recipes, and to secure specialized training and

28

assistance from Smoothie King in the operation of their franchises, irrespective of the protected territory provisions.[22] Defendants have introduced no evidence to suggest that this was the *sole* reason that they undertook the obligations set forth in the Franchise Agreements, and as noted above, the undisputed record suggests otherwise.  Thus, the Court finds no genuine issue of material fact that there existed a valid, lawful cause for undertaking the obligations set forth in the Franchise Agreements, and accordingly, these agreements do not fail for lack of cause or as illusory contracts.

### ix. *Defendants' Affirmative Defense and Claims Based on Breach of the Sarasota Franchise Agreement*

Defendants' final affirmative defense alleges that Smoothie King breached the Franchise Agreement for store #149 by failing to provide them a protected territory in which to operate their franchise.  Defendants have also counterclaimed against Smoothie King based on the same allegations.  In their counterclaim, they assert that Smoothie King breached the Franchise Agreement for store #149 in three ways: (1) by failing to provide a protected geographical territory for the franchise, (2) by placing a competing franchise in what would have otherwise been the protected territory for store #149, and (3) by refusing to allow Defendants to sell store #149 to an interested buyer.

---

[22] See Rec. Doc. 2-4, p. 10; Rec. Doc. 2-5, p. 11; Rec. Doc. 2-6, p. 9.

The "Protected Territory" provision of Franchise Agreement for store #149 provides:

> **Upon Franchisee securing a lease for the Location, Franchisor shall designate a geographical area surrounding the Franchised Business, to be described in Attachment A (the "Protected Territory"). For traditional Smoothie King Units, the Protected Territory will be defined by identifiable boundaries and include a business and/or residential population count of approximately thirty thousand (30,000) people, based upon then-current Smoothie King site selection data. The boundaries of the Protected Territory may be shaped, at Franchisor's sole discretion, to match the population criteria and natural geographic features, such as bodies of water, interstate highways and other features that normally define customer trip patterns. Except as otherwise provided in this Agreement, during the term of this Agreement, Franchisor will not establish or operate Smoothie King Units, nor grant a franchise to any person other than Franchisee to establish or operate Smoothie King Units, under the System and Proprietary Marks in the Protected Territory.[23]**

First, to the extent that Defendants claim that the failure to designate a geographic protected territory *itself* constitutes a breach of the Franchise Agreement, this claim is time-barred under Louisiana law. The applicable prescriptive period for a breach of contract claim is 10 years, running from the date of the alleged breach. See LA. CIV. CODE. art. 3499. Defendants assert that Smoothie King breached Section 1.4 of the store #149 Franchise Agreement by failing to designate a protected territory

---

[23]  Rec. Doc. 2-6, p. 10, § 1.4.

when the parties entered the agreement on July 1, 2001.[24]
Consequently, Defendants were required to have brought this claim
on or before July 1, 2011.  Defendants did not assert this claim,
however, until October 26, 2011.[25]  Once the party pleading
prescription has set forth evidence tending to show that action
has prescribed, the burden of proof shifts to the opposing party
to prove that the prescriptive period was interrupted or
suspended.  Ford Motor Credit Co. v. Bower, 589 So. 2d 571, 574
(La. Ct. App. 1991).  Defendants have introduced no other
evidence from which it might be concluded that the 10-year
prescriptive period was interrupted or otherwise suspended, and
thus the Court finds that this claim is prescribed.

　　　　Next, to the extent that Defendants allege that Smoothie
King breached the Agreement by placing a competing franchise in
what would have otherwise been their protected territory in 2007,
they have failed to carry their burden of introducing evidence
sufficient to establish this allegation.  In support of its
motion for summary judgment, Smoothie King has submitted the
expert report of James Walewski.[26]  Mr. Walewski has 22 years of
experience in location consulting for the restaurant industry and
has completed numerous consumer sales and population studies for

---

[24]　See Rec. Doc 2-6; Rec. Doc. 2-7, pp. 2-4.

[25]　See Rec. Doc. 66, pp. 32-34.

[26]　See Rec. Doc. 140-2.

various restaurants and their operators and franchisees.  His report maps a protected area encompassing a total customer population of 30,000 people, in accordance with the Protected Territory provisions of the contract, and shows that the allegedly encroaching franchise was over 3/4 of a mile outside the Defendants' protected territory.[27]

In contrast, the only evidence Defendants have offered in response is the affidavit of Defendant David Gregory, in which he testifies that Smoothie King placed a competing franchise "close to the intersection of Tamiami Trail and Stickney Point Road in Sarasota, Florida," approximately 3 miles north of store 149.[28] Notably, however, Gregory's affidavit does not offer any assessment of what the protected territory for store #149 actually was.  As Defendants' counsel reluctantly acknowledged at oral argument, they have essentially offered no evidence whatsoever to contradict Smoothie King's evidence regarding the geographic boundaries for the store's protected territory.  In the absence of any such evidence, Defendants are unable to show that the allegedly encroaching franchise was placed within their protected territory.[29]

---

[27] See Rec. Doc. 140-2, pp. 8, 11-12.

[28] Rec. Doc. 146-2, p. 2.

[29] While Defendants appear to question the methodology of Smoothie King's expert in their opposition memorandum, standing alone, this is insufficient to create a genuine issue of material

Furthermore, even assuming that there was a breach, Defendants have failed to meet their burden of proving that they have suffered any damages as a result of this breach.  The only evidence on this element, on which Defendants bear the burden of proof, is found in Defendant Gregory's affidavit, in which he conclusorily asserts that the "Stickney Point store definitely pulled customers from my Protected Territory."[30]  This conclusory, self-serving statement is without any factual support in the record.  A party's self-serving affidavit, without more, will not defeat a motion for summary judgment.  See DIRECTV, Inc. v. Budden, 420 F.3d 521, 531 (5th Cir. 2005).  Defendants have failed to introduce evidence sufficient to withstand Smoothie King's motion for summary judgment on this claim.

Finally, Defendants allege that Smoothie King breached the store #149 Franchise Agreement by preventing them from selling the franchise to an interested buyer.  The Franchise Agreement requires Defendants to obtain Smoothie King's express written consent in order to sell their franchise.[31]  As such, when a franchisee has received an offer to purchase 50% of more of his interest in the franchise and wishes to accept the offer, the selling franchisee must first "notify [Smoothie King] in writing"

fact.

[30]  Rec. Doc. 146-2, p. 2, ¶ 8.

[31]  Rec. Doc. 2-6, p. 31, § 15.1.

of the offer before it has the right to proceed with the sale.[32]
The written notice triggers a 30-day period in which Smoothie
King is entitled to exercise the option of purchasing the
franchisee's interests at the same terms offered by the potential
buyer, which in turn, triggers additional rights for the selling
franchisee regarding the valuation of the interest to be sold to
the third-party.

Here, Smoothie King has submitted the affidavit of its
general counsel, Melissa Bernheim, in which she avers that
Smoothie King never received the required written notice of an
offer to purchase store #149 from Defendants.[33]  Defendants do
not offer evidence to directly contradict this evidence.
Instead, they point to the affidavit of Defendant Gregory, in
which he asserts that Ms. Bernheim told him that he could not
sell the franchise because he did not have a written franchise
agreement.[34]  Because Defendants have failed to introduce any
evidence that they ever provided Smoothie King prior written
notice of an offer to buy their franchise, they never had the
right to sell the store under the unambiguous terms of the
contract.  As a result, the undisputed record demonstrates a lack
of evidence on one or more essential elements for Defendants'

---

[32]   Rec. Doc. 2-6, pp. 34-35, § 15.4

[33]   See Rec. Doc. 140-3, p. 3, ¶¶ 6-7.

[34]   See Rec. Doc. 146-2, p. 3, ¶11.

breach of contract claims, as well as their eleventh affirmative defense.

## C. Smoothie King's Claims

Because the Court finds that none of Defendants' affirmative defenses bar Smoothie King's right to enforce the Franchise Agreements, it must next determine whether Smoothie King has established that it is entitled to summary judgment on its two remaining breach of contract claims.

### i. Claims for Breach of Defendants' Covenants Not to Compete

In Count III, Smoothie King alleges that upon termination of the parties' franchise relationship, Defendants opened and operated competing smoothie businesses in the same locations as their former Smoothie King franchises, in violation of their covenants not to compete.  In order to recover on a breach of contract claim under Louisiana law, a plaintiff must establish (1) an undertaking of an obligation to perform, (2) a breach of that agreement by the obligor, and (3) damages suffered by the obligee on account of the breach.  Favrot, 68 So. 2d at 1109-10 (citing Jackson Joint Venture, 499 So. 2d at 427).[35]

With respect to the first element, Louisiana law explicitly recognizes that a franchisor and a franchisee may agree to

---

[35]  Because Smoothie King only seeks summary judgment on the issue of liability, however, no proof of damages is required at the present time.

covenants not to compete under the circumstances provided by La. Rev. Stat. § 23:921(F)(2).  This statute provides that a noncompetition agreement between a franchisor and franchisee is enforceable where the parties agree that:

> **The franchisee shall . . . for a period not to exceed two years following severance of the franchise relationship, refrain from engaging in any other business similar to that which is the subject of the franchise and from competing with or soliciting the customers of the franchisor or other franchisees of the franchisor.**

Here, the Franchise Agreements' noncompetition provisions are substantially similar but not identical.  The noncompetition provision for store #35 provides:

> **Franchisee shall not, for a period of two (2) years after this Agreement expires or is terminated or the date on which Franchisee ceases to conduct the business franchised under this Agreement, whichever is later, directly or as an employee, agent, consultant, partner, officer, director or shareholder of any other person, firm, entity, partnership or corporation, own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in, or assist any person or entity engaged in any business that distributes, markets or sells, at wholesale or retail, any nutritional drinks or general nutrition products or any other related business that is competitive with or similar to a Smoothie King® Unit that is located at the Unit location or within a five (5) mile radius of the Unit or any other Smoothie King® Unit in existence or planned as of the time of termination or expiration of this Agreement.[36]**

---

[36]   Rec. Doc. 2-4, pp. 39-40, § 17.3.2.

The language of the noncompetition provisions for stores #149 and #197 is slightly less expansive, but supplies essentially the same operative language:

> **For a period of two (2) years following termination or expiration of this Agreement, Franchisee shall refrain from engaging in any other business similar to that which is the subject of the franchise and from competing with or soliciting the customers of Franchisor or other franchisees of Franchisor within the market area of the Unit location designated herein or any other Smoothie King Unit in existence or planned as of the time of termination or expiration of this Agreement.**[37]

Here, Defendants do not appear to seriously dispute that they agreed to the above-cited provisions in the context of their franchise relationship with Smoothie King.[38]  Furthermore, because the Court has previously found, and still finds that these provisions comply with La. Rev. Stat. § 23:921(F)(2), these covenants are enforceable under Louisiana law, and the first

---

[37]  Rec. Doc. 2-5, p. 40, § 17.3.2; Rec. Doc. 2-6, p. 37, § 17.3.2.

[38]  Defendants did initially dispute that there was any enforceable franchise agreement for store #197.  Defendants initially argued that the Franchise Agreement for this store expired by its own terms 10 years after execution on March 19, 2008.  See Rec. Doc. 2-5, p. 12, § 2.1; p. 35.  However, at the preliminary injunction hearing, the Court found that the parties' post-expiration conduct revealed that they were continuing to operate under the same terms and conditions set forth by the initial Franchise Agreement for store #197.  See Rec. Doc. 140-4, pp. 106-08.  The parties continued to operate according to these terms and were accordingly bound by the same until their franchise relationship was terminated by Smoothie King on July 31, 2011.  See Rec. Doc. 66, pp. 2, 8-9; Rec. Doc. 140-4, pp. 106-08.

element of Smoothie King's breach of contract claim is therefore established.[39]

Next, with respect to the second element, Smoothie King has submitted undisputed evidence demonstrating that Defendant Gregory breached his covenant not to compete by operating competing smoothie businesses in the same locations as his former Smoothie King franchises.  The Franchise Agreements for stores #35 expired by its own terms on July 28, 2011, and the Franchise Agreements for stores #149 and 197 were terminated by Smoothie King on July 31, 2011.  Following the expiration or termination of the parties' franchise relationship, Defendant Gregory ceased operating the stores as Smoothie King franchises but continued to operate a similar business called Surfside Smoothies at the same locations, in clear violation of his covenants not to compete.[40]

Finally, with respect to the third element, the parties have jointly stipulated that Smoothie King suffered $12,267.41 in damages as a result of this breach.[41]  Consequently, the Court finds that Smoothie King has submitted uncontradicted evidence on each essential element of its first breach of contract claim, and summary judgment is therefore proper as to Count III.

---

[39]   See Rec. Doc. 104-4, pp. 136-39.

[40]   See Rec. Doc. 140-4, p. 93; see also Declaration of Kevin Bazner, Rec. Doc. 2-8, pp. 5-6, ¶ 16; Affidavit of David J. Gregory, Rec. Doc. 19, p. 8, ¶ 30.

[41]   See Rec. Doc. 158, ¶ 6.

*ii.  Claims for Payments Due Under the Franchise Agreements*

In Count V, Smoothie King alleges that Defendants have failed to make various payments for amounts due under the Franchise Agreements.  The terms of the Franchise Agreements require Defendants to pay Smoothie King a royalty of a certain percentage of monthly gross sales in exchange for the use of Smoothie King's franchise system and marks.[42]

The uncontradicted testimony of Darrell Warr, Smoothie King's data support and collection manager, establishes that Defendants failed to pay the required franchise fees due under the parties' Franchise Agreements for the month of July, 2011 through the dates of expiration or termination of the parties' franchise relationship – i.e., July 28, 2011 for store #35, and July 31, 2011 for stores #197 and #149.[43]  This failure constitutes a breach of the parties' Franchise Agreements.  See Am.'s Favorite Chicken Co., No. 89-2778, 1996 WL 148172, at *6 (E.D. La. Mar. 28, 1996) (franchisee's refusal to pay amounts due under franchise agreements constituted a breach).  Finally, the parties have stipulated that Smoothie King suffered $19,224.24 in damages as a result of Defendants' breach.  Smoothie King is therefore entitled to summary judgment as to Count V, as well.

---

[42]  See Rec. Doc. 2-4, p. 13, § 3.5-3.6;  Rec. Doc. 2-5, p. 14, § 3.5-3.6; Rec. Doc. 2-6, p. 12, § 3.5-3.6.

[43]  See Rec. Doc. 140-5.

### iii.   Entitlement to a Permanent Injunction

Smoothie King additionally seeks to convert its preliminary injunction on its claims for Defendants' breach of their covenant not to compete to a permanent injunction.  The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that a plaintiff must show *actual* success on the merits rather than a mere likelihood of success. Dresser-Rand Co. v. Virtual Automation, Inc., 361 F.3d 831, 847 (5th Cir. 2004) (citing Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987)).  Thus, in order to obtain a permanent injunction, a plaintiff must show:  (1) actual success on the merits of its claim; (2) irreparable injury for which no adequate remedy at law exists; (3) that the injury to the plaintiff outweighs any damage the injunction might cause defendants; and (4) that the injunction does not disserve the public interest. Id.; see also Technical Indus., Inc. v. Banks, 419 F. Supp. 2d 903, 908 (W.D. La. 2006).

Here, for reasons already expressed, the Court finds that Smoothie King is entitled to summary judgment on both of its breach of contract claims, and thus has established actual success on the merits, in satisfaction of the first element. With respect to the second element, Louisiana law provides that a plaintiff need not show irreparable harm in order to obtain injunctive relief based on the breach of a covenant not to

40

compete.  <u>See</u> LA. REV. STAT. § 23:921(H) ("In addition, upon proof
of the obligor's failure to perform, and without the necessity of
proving irreparable injury, a court of competent jurisdiction
shall order injunctive relief enforcing the terms of the
agreement."); <u>see also</u> <u>Clear Channel Broad., Inc.</u>, 2004-0133, p.
6 (La. App. 4 Cir. 3/30/05), 901 So. 2d 553, 557; <u>Century 21</u>
<u>Richard Berry & Assocs., Inc. v. Lambert</u>, 08-668, p. 5 (La. App.
5 Cir. 2/25/09), 8 So.3d 739, 742.  Accordingly, because the
undisputed evidence shows that Defendant breached their covenants
not to compete, it necessarily follows that the second element is
also met.

Third, Smoothie King must show that injury with which it is
threatened outweighs any damage the injunction might cause the
Defendants.  <u>Dresser-Rand Co.</u>, 361 F.3d at 847.  Here, this
element weighs heavily in favor of granting the permanent
injunction.  The Court finds that the noncompetition agreements
at issue in this case are reasonably limited in both geographic
scope and duration.  Defendants are only prohibited from
competing with Smoothie King for a period of two years at the
locations of their prior Smoothie King franchises and within a 5-
mile radius of other Smoothie King stores and are free to engage
in other businesses within these areas.

This harm clearly does not outweigh the harm Smoothie King
will suffer if one of its competitors, having been fully trained

41

Case 2:11-cv-02002-CJB-ALC   Document 159   Filed 05/15/12   Page 42 of 44

in its methods, techniques, and systems is allowed to operate in close proximity to its stores.  <u>See</u> <u>Trost v. O'Connor</u>, 2004-1172, pp. 7-8 (La. App. 3 Cir. 2/2/05), 893 So. 2d 974, 979-80 (holding that business owner was entitled to permanent injunction to enjoin independent contractor from violating terms of a valid noncompetition agreement).  Accordingly, the third element is met under these facts.

Finally, Smoothie King must show that the requested injunction does not disserve the public interest.  <u>Dresser-Rand Co.</u>, 361 F.3d at 847.  Here, the Court finds that granting Smoothie King the injunctive relief requested will not disserve the public interest.  Enforcing valid covenants not to compete will protect the legitimate business interests of franchisors doing business in Louisiana.  Additionally, and as this Court has previously recognized, "[i]t is clearly in the public's interest for the courts to provide injunctive relief to preserve contractual obligations." <u>Newsouth Comm. Corp. v. Universal Tel. Co.</u>, No. 02-2722, 2002 WL 31246558, at *22 (E.D. La. Oct. 4, 2002).  The final element is therefore met, and as a result, Smoothie King has shown that it is entitled to a permanent injunction.[44]

---

[44]  Because the Court finds that Smoothie King is entitled to a permanent injunction on its claims, Defendants' sixth and final cause of action for wrongful issuance of a preliminary injunction pursuant to Louisiana Code of Civil Procedure article 3608 is now moot.  <u>See</u> <u>La. Auto. Dealers Assoc. v. Politz</u>, 95-

### D.   Smoothie King's Motion to Strike Defendants' Jury Demand

The parties agree that, in light of the Court's ruling on the cross motions for summary judgment, as well as the parties' joint damages stipulation, Smoothie King's Motion to Strike Defendants' Jury Demand is now moot.

### CONCLUSION

Accordingly, for all the reasons expressed above, **IT IS ORDERED** that Smoothie King's Motion for Summary Judgment on its Claims and Defendants' Counterclaims **(Rec. Doc. 140)** is hereby **GRANTED**, and Defendants' Motion for Partial Summary Judgment **(Rec. Doc. 120)** is **DENIED**.  A final judgment will hereafter be entered in favor of Smoothie King on Counts III and V of its Amended Complaint.

**IT IS FURTHER ORDERED** that Smoothie King's Motion to Strike Defendants' Jury Demand **(Rec. Doc. 137)** is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Smoothie King is entitled to permanent injunctive relief, as requested in its motion. Accordingly, Defendants, all persons acting on behalf of or in concert with Defendants, and all person under Defendants' control will be permanently enjoined for two (2) years from July 31, 2011 from engaging in any business that distributes, markets, or sells

---

0432, p. 11 (La. App. 1 Cir. 11/9/95), 664 So. 2d 1251, 1258.

any nutritional drinks or general nutrition products or any other
related business that is competitive with or similar to a
SMOOTHIE KING® Store at the following locations: (1) Store #35
located at 825 East Bloomingdale Ave., Brandon Florida; (2) Store
#197 located at 2110 W. Brandon Blvd., Brandon, Florida; and (3)
Store #149 located at 3800 South Tamiamia Trail, Suite 108,
Sarasota, Florida, or within a five (5) mile radius of the above
listed locations or any other SMOOTHIE KING® Store.

New Orleans, Louisiana, this 14th day of May, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE